MARK TITCH
NAME
B-89549, Fl-04-227
PRISON NUMBER & Housing Number

P.O. Box 799001
CURRENT ADDRESS OR PLACE OF CONFINEMENT

San Diego, Ca   92179-9001
CITY, STATE, ZIP CODE

2254        1983
FILING FEE PAID
Yes ___   No ✓

IFP MOTION FILED

Yes ___   No ✓

COPIES SENT TO

Court ✓   Pro Se

FILED

2008 APR 10 PM 3:53

CLERK US DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

BY _____ DEPUTY

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

MARK TITCH
(FULL NAME OF PETITIONER)

PETITIONER,
Pro Se

v.

ROBERT HERNANDEZ, Warden RJDCF et.al.
(NAME OF WARDEN, SUPERINTENDENT, JAILOR, OR AUTHORIZED
PERSON HAVING CUSTODY OF PETITIONER [E.G., DIRECTOR OF THE
CALIFORNIA DEPARTMENT OF CORRECTIONS])

RESPONDENT

and

EDMOND G. BROWN
The Attorney General of the State of
California, Additional Respondent.

Civil No. ___'08 CV 0654 J WMc___
(TO BE FILLED IN BY CLERK OF U.S. DISTRICT COURT)

PETITION FOR WRIT OF HABEAS CORPUS

UNDER 28 U.S.C. § 2254
BY A PERSON IN STATE CUSTODY

1. Name and location of the court that entered the judgment of conviction under attack: I'm not attacking my conviction.  I'm challenging the decision of my 2006 parole hearing.

2. Date of judgment of conviction: ORANGE COUNTY: 10/17/77; SAN DIEGO: March/April 1978.

3. Trial court case number of the judgment of conviction being challenged: _____ ORANGE COUNTY: Case #C37693; SAN DIEGO, Case #CR42845.

4. Length of sentence: 7-to-life with all counts to run concurrent.

CIV 68 (Rev. Dec. 1998)                                   K:\COMMON\FORMS\CIV-68.

5.  Sentence start date and projected release date: __January 1, 1978.  I currently should__
    __not be in custody.  The parole board did not set term as it should have at__ my
    2006 parole hearing.
6.  Offense(s) for which you were convicted or pleaded guilty (all counts): __Murder 1st (2 cts.);__
    __Kidnapping for Robbery; Armed Robbery w/firearm (5 cts.); Burglary (3 cts.);__
    __ADW on Peace Officer w/firearm.__

7.  What was your plea? (CHECK ONE)
    (a)  Not guilty       ☐
    (b)  Guilty           ☒
    (c)  Nolo contendere  ☐

8.  If you pleaded not guilty, what kind of trial did you have? (CHECK ONE)
    (a)  Jury         ☐
    (b)  Judge only   ☐

9.  Did you testify at the trial?
    ☐ Yes  ☐ No

## DIRECT APPEAL

10. Did you appeal from the judgment of conviction in the **California Court of Appeal**?
    ☐ Yes  ☒ No

11. If you appealed in the **California Court of Appeal**, answer the following:
    (a)  Result: _____

    (b)  Date of result, case number and citation, if known: _____
    _____

    (c)  Grounds raised on direct appeal: _____
    _____
    _____
    _____

12. If you sought further direct review of the decision on appeal by the **California Supreme Court** (e.g., a Petition for Review), please answer the following:
    (a)  Result: _____

    (b)  Date of result, case number and citation, if known: _____
    _____

    (c)  Grounds raised: _____
    _____
    _____
    _____

13. If you filed a petition for certiorari in the **United States Supreme Court**, please answer the following with respect to that petition:

   (a) Result: _____

   (b) Date of result, case number and citation, if known: _____

       _____

   (c) Grounds raised: _____

       _____

       _____

       _____

## COLLATERAL REVIEW IN STATE COURT

14. Other than a direct appeal from the judgment of conviction and sentence, have you previously filed any petitions, applications, or motions (e.g., a Petition for Writ of Habeas Corpus) with respect to this judgment in the **California Superior Court**?
☐ Yes ☒ No

15. If your answer to #14 was "Yes," give the following information:

   (a) **California Superior Court** Case Number: _____

   (b) Nature of proceeding: _____

       _____

   (c) Grounds raised: _____

       _____

       _____

       _____

   (d) Did you receive an evidentiary hearing on your petition, application or motion?
       ☐ Yes ☐ No

   (e) Result: _____

   (f) Date of result: _____

16. Other than a direct appeal from the judgment of conviction and sentence, have you previously filed any petitions, applications, or motions (e.g., a Petition for Writ of Habeas Corpus) with respect to this judgment in the **California Court of Appeal**?
☐ Yes ☒ No

17. If your answer to #16 was "Yes," give the following information:

    (a) **California Court of Appeal** Case Number:_____

    (b) Nature of proceeding: _____
        _____

    (c) Grounds raised: _____
        _____
        _____
        _____

    (d) Did you receive an evidentiary hearing on your petition, application or motion?
        ☐ Yes  ☐ No

    (e) Result: _____

    (f) Date of result: _____

18. Other than a direct appeal from the judgment of conviction and sentence, have you previously filed any petitions, applications, or motions (e.g., a Petition for Writ of Habeas Corpus) with respect to this judgment in the **California Supreme Court**?
☐ Yes  ☒ No

19. If your answer to #18 was "Yes," give the following information:

    (a) **California Supreme Court** Case Number:_____

    (b) Nature of proceeding: _____
        _____

    (c) Grounds raised: _____
        _____
        _____
        _____
        _____

    (d) Did you receive an evidentiary hearing on your petition, application or motion?

        ☐ Yes  ☐ No

    (e) Result: _____

    (f) Date of result: _____

20.  If you did *not* file a petition, application or motion (e.g., a Petition for Review or a Petition for Writ of Habeas Corpus) with the **California Supreme Court**, containing the grounds raised in this federal Petition, explain briefly why you did not:

_____

_____

_____

_____

## COLLATERAL REVIEW IN FEDERAL COURT

21.  Is this your **first** federal petition for writ of habeas corpus challenging this ~~conviction?~~ *hearing*.
     ☒ Yes ☐ No     (IF "YES" SKIP TO #22)
     (a)  If no, in what federal court was the prior action filed? _____
     (i)  What was the prior case number? _____
     (ii)  Was the prior action (CHECK ONE):
            ☐ Denied on the merits?
            ☐ Dismissed for procedural reasons?
     (iii)  Date of decision: _____
     (b)  Were any of the issues in this current petition also raised in the prior federal petition?
            ☐ Yes ☐ No
     (c)  If the prior case was denied on the merits, has the Ninth Circuit Court of Appeals given you permission to file this second or successive petition?
            ☐ Yes ☐ No

---

CAUTION:

- **Exhaustion of State Court Remedies:** In order to proceed in federal court you must ordinarily first exhaust your state court remedies as to each ground on which you request action by the federal court. This means that even if you have exhausted some grounds by raising them before the California Supreme Court, you must first present *all* other grounds to the California Supreme Court before raising them in your federal Petition.

- **Single Petition:** If you fail to set forth all grounds in this Petition challenging a specific judgment, you may be barred from presenting additional grounds challenging the same judgment at a later date.

- **Factual Specificity:** You must state facts, not conclusions, in support of your grounds. For example, if you are claiming incompetence of counsel you must state facts specifically setting forth what your attorney did or failed to do. A rule of thumb to follow is — state who did exactly what to violate your federal constitutional rights at what time or place.

---

CIV 68 (Rev. Dec. 1998)

K:\COMMON\FORMS\CIV-6S.

## GROUNDS FOR RELIEF

22. State *concisely* every ground on which you claim that you are being held in violation of the constitution, law or treaties of the United States. Summarize *briefly* the facts supporting each ground. If necessary, you may attach pages stating additional grounds and/or facts supporting each ground.

(a) **GROUND ONE**: _____ SEE ATTACHED PETITION _____

_____

_____

Supporting FACTS (state *briefly* without citing cases or law) __SEE ATTACHED PETITION__

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

Did you raise GROUND ONE in the California Supreme Court?
☒ Yes ☐ No.

(b) **GROUND TWO**: _____

_____

_____ SEE ATTACHED PETITION _____

**Supporting FACTS** (state *briefly* without citing cases or law): ____ SEE ATTACHED PETITION

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

**Did you raise GROUND TWO in the California Supreme Court?**
☒ Yes ☐ No.

(c) **GROUND THREE:**

SEE ATTACHED PETITION

**Supporting FACTS** (state *briefly* without citing cases or law):    SEE ATTACHED PETITION

**Did you raise <u>GROUND THREE</u> in the California Supreme Court?**

☒ Yes ☐ No.

**(d) GROUND FOUR:** _____

_____

_____

_____

**Supporting FACTS** (state *briefly* without citing cases or law): _____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

**Did you raise GROUND FOUR in the California Supreme Court?**

☐ Yes ☐ No.

CIV 68 (Rev. Dec. 1998)

K:\COMMON\FORMS\CIV-68.

**23.** Do you have any petition or appeal **now pending** in any court, either state or federal, pertaining to the judgment under attack?
☐ Yes  ☒ No

**24.** If your answer to #23 is "Yes," give the following information:

    (a)  Name of Court: _____

    (b)  Case Number: _____

    (c)  Date action filed: _____

    (d)  Nature of proceeding: _____

          _____

    (e)  Grounds raised: _____

          _____

          _____

          _____

          _____

    (f)  Did you receive an evidentiary hearing on your petition, application or motion?
          ☐ Yes  ☐ No

**25.** Give the name and address, if known, of each attorney who represented you in the following stages of the judgment attacked herein:

    (a)  At preliminary hearing: _____N/A_____

          _____

    (b)  At arraignment and plea: _____N/A_____

          _____

    (c)  At trial: _____N/A_____

          _____

    (d)  At sentencing: _____N/A_____

          _____

    (e)  On appeal: _____N/A_____

    (f)  In any post-conviction proceeding: _____N/A_____

          _____

    (g)  On appeal from any adverse ruling in a post-conviction proceeding: ___N/A_____

          _____

26. Were you sentenced on more than one count of an indictment, or on more than one indictment, in the same court and at the same time?
☒ Yes ☐ No

27. Do you have any future sentence to serve after you complete the sentence imposed by the judgment under attack?
☐ Yes ☒ No

(a) If so, give name and location of court that imposed sentence to be served in the future:

_____

(b) Give date and length of the future sentence: _____

_____

(c) Have you filed, or do you contemplate filing, any petition attacking the judgment which imposed the sentence to be served in the future?
☐ Yes ☐ No

28. Date you are mailing (or handing to a correctional officer) this Petition to this court: _____

*April 8, 2008*
_____

Wherefore, Petitioner prays that the Court grant Petitioner relief to which he may be entitled in this proceeding.

_____

SIGNATURE OF ATTORNEY (IF ANY)

I declare under penalty of perjury that the foregoing is true and correct. Executed on

_____4/8/08_____          *Mark W. Title*
    (DATE)                    SIGNATURE OF PETITIONER

CIV 68 (Rev. Dec. 1998)                  -11-                  K:\COMMON\FORMS\CIV-68.

1  Mark Titch
   B-89549, F1-04-227
2  P.O. Box 799001
   San Diego, Ca    92179-9001
3
   Petitioner, Pro Se
4

5

6                    UNITED STATES DISTRICT COURT

7              FOR THE SOUTHERN DISTRICT OF CALIFORNIA

8

9                                    )
10                                   )
                                     )
11     MARK TITCH,                   )
       Petitioner, Pro Se           )    Case No._____
12                                   )
            vs.                      )
13                                   )
       ROBERT HERNANDEZ,             )
14     Warden, RJDCF et.al.          )
                                     )    PETITION FOR WRIT OF HABEAS CORPUS
15          Respondents             )    (UNDER 28 U.S.C. §2254)
   _____)

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

**Page**

Table of Authorities                                              ii

Table of Exhibits                                                iv

**INTRODUCTION**                                                  1

    I.  The Parties                                       4

    II.  Exhaustion of Administrative Remedies             4

  III.  Statement of Jurisdiction                           5

    IV.  Requirements of Due Process; Standard of Review   5

**PETITIONER'S CONSTITUTIONAL CLAIMS**

    Ground #1:  The Board failed to follow its own rules and
regulations at petitioner's 2006 parole hearing, thus
violating petitioner's right to due process as guaranteed
by both state and federal Constitutions.                         7

    Ground #2:  The Board's decision is arbitrary and capricious
because it is unsupported by any evidence, inapposite to the
record, and lacks a rational nexus between the factors cited
and petitioner's current parole risk, thus violating
petitioner's state and federal constitutional right to due
process.                                                        10

    Ground #3:  The Board's continual denial of petitioner's
parole, based on unchanging, static factors and contrary to
substantial change for the better, converts petitioner's
term of life with the possibility of parole to life without
the possibility of parole and violates due process as
guaranteed by both state and federal Constitutions.             28

Prayer for Relief                                                35

Verification                                                     36

Declaration of Service by Mail                                   37

**TABLE OF AUTHORITIES**

**California Constitution:**

    Article I, Section 7, subdivision (a)

**United States Constitution:**

    Fourteenth Amendment

**State Administrative Regulations:**

    California Code of Regulations, Title 15, Division 2

**State Case Law:**

Agricultural Labor Relations Bd. v. Superior Court (1976) 16 Cal.3d 392

In re Cortinas 2004 DJDAR 5786

In re Dannenberg (2005) 34 Cal.4th 1061

In re Elkins (2006) 144 Cal.App.4th 475

In re French (1980) 106 Cal.App.3d 74

In re Lee (2006) 143 Cal.App.4th 1400

In re Ramirez (2001) 94 Cal.App.4th 549

In re Reina (1985) 171 Cal.App.3d 638

In re Rosenkrantz (2002) 29 Cal.4th 616

In re Scott (2004) 119 Cal.App.4th 871

In re Scott (2005) 133 Cal.App.4th 573

In re Smith (2003) 109 Cal.App.4th 489

In re Smith (2003) 114 Cal.App.4th 343

Terhune v. Superior Court (1988) 65 Cal.App.4th 864

In re Van Houton (2004) 116 Cal.App.4th 339

**Federal Case Law:**

Bar MK Ranches v. Yeuther (10th Cir., 1993) 994 F.2d 735

Biggs v. Terhune (9th Cir., 2003) 334 F.3d 910

Block v. Potter (11th Cir., 1983) 714 F.2d 1510

Caldwell v. Miller (7th Cir., 1986) 790 F.2d 589

**TABLE OF AUTHORITIES (CONT'D)**

**Federal Case Law:**

Diaz v. Norton (    ) 376 F.Supp.112

Dunn v. U.S. Parole Commission (10th Cir., 1987) 818 F.2d 742

Edwards v. Balisok (1997) 520 U.S. 641

Environmental Defense Ctr., Inc. v. EPA (9th Cir., 2003) 344 F.3d 832

Ellard v. Alabama Bd. of Pardons & Paroles (11th Cir., 1987) 824 F.2d 937

Evans v. Carey (E.D. Cal. 2006) WL 1867543

Greenholtz v. Nebraska Penal Inmates (1979) 442 U.S. 1

Hewitt v. Helms (1983) 459 U.S. 460

Hicks v. Oklahoma (1980) 447 U.S. 343

Irons v. Warden of Cal. State Prison-Solano (E.D. Cal. 2005) 358 F. Supp.2d 936

Johnson v. Texas (1993) 509 U.S. 350

Lupo v. Norton (    ) 371 F.Supp 156

McQuillion v. Duncan (9th Cir., 2002) 306 F.3d 895

Montoya v. U.S. Parole Commission (10th Cir., 1990) 908 F.2d 635

Morrissey v. Brewer (1972) 408 U.S. 471

Payne v. Block (11th Cir., 1983) 714 F.2d 1510

Rosenkrantz v. Marshall (C.D. Cal. 2006) 444 F.Supp.2d 1063

Sass v. Calif. Bd. of Prison Terms (9th Cir., 2006)___F.3d___2006 WL 2506393

Schering Corp. v. Shalala (D.C. Cir., 1993) 995 F.2d 1103

Stanford v. Kentucky (1989) 492 U.S. 361

Superintendent v. Hill (1985) 472 U.S. 445

Thompson v. Oklahoma (1988) 487 U.S. 815

United States v. Nixon (1974) 418 U.S. 683

Vargas v. U.S. parole Commission (9th Cir., 1988) 865 F.2d 191

Vitek v. Jones (1980) 445 U.S. 480

Wolff v. McDonnell (1974) 418 U.S. 539

iii

1

**TABLE OF EXHIBITS**

| | | Page(s) |
|---|---|---|
| **Volume I:** | | |
| EXHIBIT 1: | California Code of Regulations, Title 15, Division 2 (selected relevant sections) | 1-9 |
| EXHIBIT 2: | Orange County Information Sheet (Indictment) | 1-6 |
| EXHIBIT 3: | Sentencing Transcript | 1-29 |
| EXHIBIT 4: | Abstract of Judgement | 1-7 |
| EXHIBIT 5: | CYA Referral Document | 1-18 |
| EXHIBIT 6: | CDC Cumulative Case Summary | 1-14 |
| EXHIBIT 7: | Orange County D.A.'s 1203.01 Statement | 1-2 |
| EXHIBIT 8: | Letter From Lt. Cross, Anaheim Police Department | 1-2 |
| EXHIBIT 9: | San Diego Police Officer's Report | 1 |
| EXHIBIT 10: | CDC 128-G Classification Chrono | 1 |
| EXHIBIT 11: | Excerpts From 2001 Board Hearing | 1-5 |
| EXHIBIT 12: | FBI Arrest and Conviction Record | 1-3 |
| EXHIBIT 13: | 2006 Life Prisoner Evaluation Report | 1-12 |
| EXHIBIT 14: | 2003 Life Prisoner Evaluation Report | 1-8 |
| EXHIBIT 15: | 2000 Life Prisoner Evaluation Report | 1-12 |
| EXHIBIT 16: | 1998 Life Prisoner Evaluation Report | 1-8 |
| EXHIBIT 17: | Board's Response to Petitioner's 1040 BPT Appeal of his 2003 Parole Hearing | 1-15 |
| EXHIBIT 18: | CDC 602 Appeal of Petitioner's 2003 Life Prisoner Evaluation Report | 1-10 |
| EXHIBIT 19: | 2006 Mental Health Evaluation | 1-6 |
| EXHIBIT 20: | 2000 Mental Health Evaluation | 1-8 |
| EXHIBIT 21: | 1998 Mental Health Evaluation | 1-3 |
| EXHIBIT 22: | 1995 Mental Health Evaluation (Dr. Smith) | 1-2 |
| EXHIBIT 23: | 1995 Mental Health Evaluation (Dr. Jenesky) | 1-2 |

2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

1

## TABLE OF EXHIBITS

2  **Volume I:**                                                    **Page(s)**

3  EXHIBIT 24:  1992 Mental Health Evaluation                       1-2

4  EXHIBIT 25:  1989 Mental Health Evaluation                       1-2

5  EXHIBIT 26:  1986 Mental Health Evaluation                       1-2

6  EXHIBIT 27:  1983 Mental Health Evaluation                       1-2

7  EXHIBIT 28:  2003 Parole Hearing Decision                        1-14

8  EXHIBIT 29:  2001 Parole Hearing Decision                        1-13

9  EXHIBIT 30:  1998 Parole Hearing Decision                        1-6

10 EXHIBIT 31:  1995 Parole Hearing Decision                        1-6

11 EXHIBIT 32:  1992 Parole Hearing Decision                        1-8

12 EXHIBIT 33:  1989 Parole Hearing Decision                        1-10

13 EXHIBIT 34:  1986 Parole Hearing Decision                        1-10

14 EXHIBIT 35:  1983 Parole Hearing Decision                        1-17

15 EXHIBIT 36:  Achievements                                        1-5

16 EXHIBIT 37:  Laudatory Memorandums and Chronos                   1-6

17 EXHIBIT 38:  Resume of Employment Skills (Job Queries and
               Information)                                         1-18

18

19

20

21

22

23

24

25

26

27

28

## TABLE OF EXHIBITS

**Volume II:**                                                              **Page(s)**

EXHIBIT 39:  Employment Offer                                          1

EXHIBIT 40:  Support Letters                                           1-8

EXHIBIT 41:  Self-Help & Personal Development                         1-28

EXHIBIT 42:  Compendium of Life Inmates' Demographics
             (Selected relevant sections)                             1-24

EXHIBIT 43:  Statistics                                                1-6

EXHIBIT 44:  Various Newspaper Articles and Other Info.               1-21

Exhibit 45:  CDC Memorandum:  Notice of In Re Rutherford              1-3

EXHIBIT 46:  2006 Parole Hearing Transcript                           1-107

EXHIBIT 47:  Yellen v. Butler                                          1-14

EXHIBIT 48:  Coleman v. BPT                                            1-10

EXHIBIT 49:  Irons v. Warden of Cal. State Prison-Solano              1-25

EXHIBIT 50:  In re Rosenkrantz (Superior Court)                        1-6

EXHIBIT 51:  Rosenkrantz v. Marshall                                   1-46

EXHIBIT 52:  Orange County Superior Court Denial                      1-10

EXHIBIT 53:  California Appellate Court Denial                         1-2

EXHIBIT 54:  California Supreme Court Denial                           1-2

1 | Mark Titch
  | B-89549, Fl-04-227
2 | P.O. Box 799001
  | San Diego, Ca    92179-9001
3 |
4 | Petitioner, Pro Se
5 |
6 | UNITED STATES DISTRICT COURT
7 | FOR THE SOUTHERN DISTRICT OF CALIFORNIA
8 |
9 |
10 |
11 | MARK TITCH,
   | Petitioner, Pro Se                    Case No._____
12 |
   |         vs.
13 |
   | ROBERT HERNANDEZ,
14 | Warden RJDCF et. al.                   PETITION FOR WRIT OF HABEAS CORPUS
   |                                        (UNDER 28 U.S.C. §2254)
15 |         Respondents
16 |
17 |
18 |
19 |
20 | **INTRODUCTION**
21 |     Petitioner, Mark Titch, hereby submits the foregoing **Petition For Writ**
22 | **Of Habeas Corpus**, alleging that the Board of Parole Hearings (hereafter the
23 | "Board") has violated his constitutional right to Due Process as guaranteed
24 | by both state and federal Constitutions (Cal. Const.: Article I, Section 7,
25 | subdiv.(a); Fed. Const.: Fourteenth Amendment).
26 |     In 1977, petitioner pled guilty in Orange County to two counts of first
27 | degree murder, one count of kidnapping for purpose of robbery, five counts of
28 | armed robbery with use of firearm, and three counts of burglary (Exhibits 3

1

1  and 4).  Additionally, in 1978, petitioner pled guilty in San Diego to

2  assault with a deadly weapon on a peace officer with use of a firearm

3  (Exhibit 6, p.2).  For these offenses, petitioner received a 7-to-life

4  sentence with all counts to run concurrent (Exhibits 3, 4, and 6).

5       A summary of petitioner's offenses may be found in Exhibits 13 and 52.

6  The court should also consult Exhibits 2 through 4; Exhibit 5, pp. 2-5;

7  Exhibit 6, p.9; and Exhibits 8 through 11.  Petitioner disagrees with the

8  Orange County District Attorney's 1203.01 statement on the grounds that it's

9  either inaccurate or misleading (Exhibit 7); disagrees with the CDC Cumulative

10  Case Summary to the extent that it incorporates the D.A.'s 1203.01 statements

11  and lists them under the heading "CYA Facts" (Exhibit 6); and disagrees with

12  the summaries of his offenses as given in his 2003 Life Prisoner Evaluation

13  Report (Exhibit 14).  With respect to the 2003 report, in fact, petitioner

14  filed a CDC 602 appeal and a BPT 1040 appeal opposing it (Exhibits 17 and 18)

15  which the court should also consult as both provide additional clarification

16  concerning petitioner's admissions about his crimes.

17       There are other discrepancies in the record which petitioner feels

18  need to be clarified as well.  In petitioner's 1983 Board decision, the Board

19  stated petitioner admitted shooting Laura Stoughton twice in the face while

20  she was holding a rosary and praying for her life (Exhibit 35, p.13).  This

21  is not true.  Petitioner has always been advised by his state appointed

22  lawyers representing him during his Board hearings not to dispute the facts

23  of his case or else the Board would perceive petitioner as denying

24  responsibility for his actions.  Hence, petitioner's silence about the record,

25  or lack of opposition to it, was probably taken by the Board as an admission

26  of guilt, not that petitioner actually admitted to them.

27       In petitioner's 1986 mental health evaluation, Dr. Brandmeyer states

28  that petitioner was in agreement with the D.A.'s 1203.01 statement, except

1   where the D.A. said that petitioner should never get out of prison (Exhibit

2   26, p.1).  Again, this is not true.  As Dr. Brandmeyer stated, in fact,

3   petitioner complained about an "R" being placed in his jacket (Id.).  The

4   "R" designation was placed on petitioner's custody in lieu of the D.A.'s

5   statement that petitioner's crime partner, Brett Thomas, said petitioner

6   attempted to rape Laura Stoughton.  Hence, petitioner was clearly not in

7   agreement with the D.A.'s statement.

8        Finally, in the CYA Referral Report, it's stated that petitioner's

9   father reported that petitioner (when he was a juvenile) fired a gun at

10  another boy with the intent to kill him (Exhibit 5, p.11).  Apparently, this

11  incident is in reference to petitioner's arrest for assault with intent to

12  commit murder which petitioner discussed with the Board during the hearing

13  (Exhibit 46, pp.26-29).  Although petitioner does not know why his father

14  may have believed this story, petitioner only fired a gun in the air to

15  stop the boy's father (not the boy) from pursuing him.  As petitioner told

16  the Board, in fact, the charge of assault with intent to commit murder was

17  dismissed (Exhibit 46, p.26).

18       Under a 7-to-life sentence, the term is not to be set by the trial

19  court but is to be determined by the California Board of Parole Hearings

20  (or Board).  The primary statutes and regulations governing the Board's

21  parole suitability hearings are Penal Codes §§3041(a) and 3041(b) as well as

22  the California Code of Regulations, Title 15, Division 2 (see In re Rosenkrantz

23  (2002) 128 Cal. Rptr.2d 114, pp.137-138).

24       Petitioner attended his initial parole hearing in 1983 and was denied

25  parole.  Petitioner had subsequent parole hearings in 1986, 1989, 1992,

26  1995, 1998, 2001, 2003, and 2006 with the same result.  In the foregoing

27  writ, petitioner challenges the Board's decision at his 2006 hearing,

28  alleging

                                    3

1    1) The Board failed to follow its own rules and regulations in

2 determining petitioner's suitability for parole;

3    2) The Board's decision is arbitrary and capricious because it

4 is unsupported by any evidence, inapposite to the record, and lacks a

5 rational nexus between the factors cited and petitioner's current parole

6 risk; and

7    3) The Board's continual denial of petitioner's parole, based

8 on unchanging, static factors and contrary to substantial change for the

9 better, illegally converts petitioner's term of life with the possibility

10 of parole to life without the possibility of parole.

11   Based on these grounds, petitioner believes the Board has violated his

12 due process rights as guaranteed by both state and federal constitutions.

13

14 I. **THE PARTIES.**

15   MARK TITCH is the petitioner, represented pro se, and is currently

16 incarcerated at the Richard J. Donovan Correctional Facility in San Diego,

17 California.

18   ROBERT HERNANDEZ is the warden of the Richard J. Donovan Correctional

19 Facility and currently has legal custody of petitioner.

20   JAMES DAVIS is the chairman of the Board of Parole Hearings, the

21 agency responsible for administering petitioner's 7-to-life sentence.

22

23 II. **EXHAUSTION OF ADMINISTRATIVE AND STATE REMEDIES.**

24   Effective May 1, 2004, the Board repealed its regulation requiring

25 life-term inmates to file an administrative appeal when challenging Board

26 decisions.  Hence, there is no administrative exhaustion requirement.

27   On February 23, 2007 , petitioner filed a writ in the state courts,

28 raising the same issues as in this petition.  These claims were denied by

1  the California Supreme Court on _____ (see Exhibits 52, 53, and

2  54).  Hence, all state remedies have been properly exhausted.

3

4  **III.   STATEMENT OF JURISDICTION.**

5      The United States District Court for the Southern District of California

6  has legal jurisdiction under 28 U.S.C. §2254(a) which states

7          "The Supreme Court, a justice thereof, a circuit judge, or a
           district court shall entertain an application for a writ of
8          habeas corpus on behalf of a person in state custody only on
           the ground that he is in custody in violation of the
9          constitution or laws or treaties of the United States."

10  Petitioner asserts that he is in custody in violation of the Constitution of

11  the United States.

12      The United States District Court for the Southern District of California

13  also has legal jurisdiction under 28 U.S.C. §2254(A) because petitioner has

14  exhausted the remedies available in the courts of the state; and also under

15  §2254(d)(1) because the adjudication of petitioner's claims in state court

16  has "resulted in a decision that was contrary to, or invloved an unreasonable

17  application of, clearly established federal law, as determined by the Supreme

18  Court of the United States."

19

20  **IV.   REQUIREMENTS OF DUE PROCESS; STANDARD OF REVIEW.**

21      1) California's parole scheme gives rise to a cognizable liberty

22  interest that is entitled to protection under both state and federal

23  Constitutions In re Rosenkrantz (2002) 29 Cal.4th 616,621; McQuillion v.

24  Duncan (9th Cir., 2002) 306 F.3d 895,903; Biggs v. Terhune (9th Cir., 2003)

25  334 F.3d 910, pp.914-915; Sass v. Calif. Bd. of Prison Terms (2006)___F.3d___

26  2006 WL 2506393.

27      2) Parole decisions must be based on relevant factors and cannot be

28  arbitrary or capricious In re Rosenkrantz, supra, 29 Cal.4th at 677; In re

1    Dannenberg (2005) 34 Cal.4th 1061,1071; Wolff v. McDonnell (1974) 418 U.S.

2    539,558; Vitek v. Jones (1980) 445 U.S. 480, pp.488-489; Environmental

3    Defense Center, Inc. v. EPA (9th Cir., 2003) 344 F.3d 832, 858; Dunn v. U.S.

4    Parole Commission (10th Cir., 1987) 818 F.2d 742,745; Montoya v. U.S.

5    Parole Commission (10th Cir., 1990) 908 F.2d 635.

6        3) Parole decisions must be supported by "some evidence" and that

7    evidence must have an "indicia of reliability" In re Rosenkrantz (Id.);

8    Superintendent v. Hill (1985) 472 U.S. 445, 457.  Additionally,

9    suitability determinations must have some rational basis in fact In re Lee

10   (2006) 43 Cal.App.4th 1400; In re Elkins (2006) 144 Cal.App.4th 475.

11       4) The Board must set a parole release date unless a prisoner is found

12   unsuitable for parole as specified by statute or regulation In re Rosenkrantz

13   (Id.).  Furthermore, prisoners are entitled to the benefits of the state

14   statutes they are sentenced under and have the right to expect prison

15   officials to follow their own regulations Hicks v. Oklahoma (1980) 447 U.S.

16   343; United States v. Nixon (1974) 418 U.S. 683, pp.695-696; Vargas v. U.S.

17   Parole Commission (9th Cir., 1988) 865 F.2d 191, pp.193-194.

18       5)  Interminable parole denials, based on unchanging, static factors

19   and contrary to substantial change for the better violate due process and

20   result in an arbitrary denial of prisoners' liberty interests Greenholtz v.

21   Nebraska Penal Inmates (1979) 442 u.s. 1, 15; Wolff v. McDonnell (Id.);

22   Biggs v. Terhune (Id.); Irons v. Warden of Cal. State Prison-Solano (E.D.

23   Cal. 2005) 358 F.Supp.2d 936,947; Rosenkrantz v. Marshall (C.D. Cal. 2006)

24   444 F.Supp.2d 1063, pp.1081-1082.

25

26

27

28

6

GROUND #1:    THE BOARD FAILED TO FOLLOW ITS OWN RULES AND REGULATIONS AT PETITIONER'S 2006 PAROLE HEARING, THUS VIOLATING PETITIONER'S RIGHT TO DUE PROCESS AS GUARANTEED BY BOTH STATE AND FEDERAL CONSTITUTIONS.

At petitioner's 2006 parole hearing, the Board found petitioner unsuitable for parole and denied petitioner a parole release date for two years (Exhibit 46, pp.99-106). According to the decision, the Board found petitioner unsuitable for parole because 1) the offenses were carried out in an especially cruel and callous manner; 2) there were multiple victims attacked, injured, and killed in separate instances; 3) the offenses were carried out in a manner which demonstrates an exceptionally callous disregard for human suffering; 4) the motive for the crimes were very trivial in relation to the offenses; 5) there is an escalating pattern of criminal conduct and violence; 6) [petitioner has] a history of unstable and tumultuous relationships; 7) [petitioner has] failed previous grants of parole or society's previous attempts to correct [his criminality]; 8) [petitioner has] five serious CDC 115 disciplinaries, four for violence, one for alcohol; and 9) the most recent psychological report is not supportive of release (Id.).

As the record indicates, the Board denied petitioner's parole based on the criteria set forth in California Code of Regulations (hereafter CCR), Title 15, Division 2, §2281(c) (Exhibit 1, p.3). However, these criteria are to be applied to prisoners who committed their offense after July 1, 1977. As stated in CCR §2292(a), "All life prisoners committed to state prison for crime(s) committed prior to July 1, 1977 <u>shall</u> be heard in accordance with rules in effect prior to July 1, 1977." (Exhibit 1, p.7) Furthermore, CCR §2300 states, "All ISL prisoners <u>shall</u> be considered for parole pursuant to the procedures in this article." (Exhibit 1, p.8) Petitioner is an ISL prisoner as he was "sentenced to prison for a crime committed on or before June 30, 1977...." (CCR §2000(b)(1), Exhibit 1, p.2; Exhibits 2,3,4).

Accordingly, "In determining whether an ISL prisoner is unsuitable for

parole, the hearing panel <u>shall</u> consider factors which affect the severity

of the offense and the risk of danger to society if the prisoner were

released.  Examples of factors indicating the prisoner is unsuitable for

parole include

    a) A history of violent attacks.

    b) A history of forcible sexual attacks on others.

    c) A persistent pattern of criminal behavior and a failure to
       demonstrate evidence of a substantial change for the better.

    d) The presence of a psychiatric or psychological condition related
       to the prisoner's criminality which creates a high likelihood that
       new serious crimes will be committed if released." (CCR §2316,
       Exhibit 1, p.9).

Finally, CCR §2000(a) states, "shall" is mandatory (Exhibit 1, p.2).  Hence,

according to the Board's regulations, the Board did not apply the correct

guidelines in determining petitioner's suitability for parole.  This

violates due process.  As established by the U.S. Supreme Court and Ninth

Circuit Court of Appeals, prison officials (including parole boards) are

bound to follow their own regulations and these regulations have the force

of law <u>United States v. Nixon</u> (1974) 418 U.S. 683, 695-696; <u>Vargas v. U.S.</u>

<u>Parole Commission</u> (9th Cir., 1988) 865 F.2d 191, pp.193-194.  Other federal

courts concur.  In <u>Caldwell</u>, for example, the 7th Circuit states, "an agency

must conform its actions to the procedures it has adopted" and inmates

have "the right to expect prison officials to follow its policies and

regulations (Citations omitted)." <u>Caldwell v. Miller</u> (7th Cir., 1986) 790

F.2d 589, pp.609-610.  Similarily, the 10th Circuit states that administrative

agencies are required to follow their own regulations <u>Bar MK Ranches v.</u>

<u>Yeuther</u> (10th Cir., 1993) 994 F.2d 735; while the 11th Circuit states that

"an agency must follow its own procedure even though the procedure is

more stringent than would constitutionally be required." (11th Cir., 1983)

714 F.2d 1510,1517 (see also <u>Schering Corp. v. Shalala</u> (D.C. Cir., 1993)

holding no matter what agency has said in past, or what it did not say,

after agency issues regulations it must abide by them).  California Courts

have made similar rulings as well (see, for example, <u>In re French</u> (1980)

106 Cal.App.3d 74, 85, n.24, holding Director's rules are binding on

individual institutions; <u>In re Reina</u> (1985) 171 Cal.App.3d 638; and

<u>Agricultural Labor Relations Bd. v. Superior Court</u> (1976) 16 Cal.3d 392,401).

As the above facts and arguments demonstrate, then, the Board violated Due

Process by failing to follow its own regulations.

1     **GROUND #2:**   **THE BOARD'S DECISION IS ARBITRARY AND CAPRICIOUS BECAUSE IT**
               **IS UNSUPPORTED BY ANY EVIDENCE, INAPPOSITE TO THE RECORD,**
2                **AND LACKS ANY RATIONAL NEXUS BETWEEN THE FACTORS CITED AND**
               **PETITIONER'S CURRENT PAROLE RISK, THUS VIOLATING PETITIONER'S**
3                **STATE AND FEDERAL CONSTITUTIONAL RIGHT TO DUE PROCESS.**

4     California's parole scheme gives rise to a cognizable liberty interest

5 that is entitled to protection under both state and federal constitutions In

6 re Rosenkrantz (2002) 29 Cal.4th 616,621; McQuillion v. Duncan (9th Cir.,

7 2002) 306 F.3d 895,903; Biggs v. Terhune (9th Cir., 2003) 334 F.3d 910,914-915;

8 Sass v. Calif. Bd. of Prison Terms (2006)___F.3d___2006 WL 2506393.

9     Under California state law, one year prior to petitioner's minimum

10 eligible parole release date, petitioner is entitled to appear before the

11 Board of Parole Hearings (or "Board") to be considered for parole (Penal Codes

12 3041(a) and 3041(b)).  Accordingly, as specified by statute, the Board "shall

13 normally set a parole release date" unless "it determines that the gravity of

14 the current convicted offense or offenses, or the timing and gravity of current

15 or past convicted offense or offenses, is such that consideration of the public

16 safety requires a more lengthy period of incarceration...." In re Ramirez

17 (2001) 94 Cal.App.4th 549; 114 Cal.Rptr.2d 381,393.

18     The Board has established regulations for determining whether an inmate

19 is suitable or unsuitable for release on parole which are published in the

20 California Code of Regulations, Title 15, Division 2 (hereafter "CCR").  The

21 relevant sections of the CCR, as applied by the Board at petitioner's parole

22 hearing, are CCR §2280-2292 (Exhibit 1).  CCR §2281(a) states, "The panel

23 shall first determine whether a prisoner is suitable for release on parole.

24 Regardless of the length of time served, a life prisoner shall be found

25 unsuitable and denied parole if in the judgement of the panel the prisoner

26 will pose an unreasonable risk of danger to society if released from prison."

27 Hence, as specified by statute and regulation, the Board shall set a release

28 date unless the inmate currently poses an unreasonable risk of danger to

10

society (see In re Smith (2003) 114 Cal.App.4th 343,370, holding "[A]
determination of unsuitability is simply shorthand for a finding that a
prisoner currently would pose an unreasonable risk of danger if released at
this time.").

In making its determination, the Board "must be cognizant not only of
the factors required by state statute...but also the concepts embodied in the
Constitution requiring Due Process." Greenholtz v. Nebraska Penal Inmates (1979)
442 U.S. 1, pp.7-8.  Furthermore, according to the California Supreme Court,
parole decisions "must reflect an individualized consideration of the
specified criteria and cannot be arbitrary and capricious." In re Rosenkrantz
(2002) 29 Cal.4th 616,677; see also In re Dannenberg (2005) 34 Cal.4th 1061,
1071, holding Board decisions not based on evidence or relevant factors may
deny prisoners their Due Process rights.  Our U.S. Supreme Court demands no
less, holding "Prisoners are entitled to be free from arbitrary actions of
prison officials that affect their constitutionally protected interests."
Wolff v. McDonnell (1974) 418 U.S. 539,558; Vitek v. Jones (1980) 445 U.S. 480,
pp.488-489.  As summarized in Ramirez,

> "Judicial oversight must be extensive enough to protect
> the limited right of parole applicants to be free from
> an arbitrary parole decision...and to something more than
> mere pro forma consideration. (citation)  The courts may
> properly determine whether the Board's handling of parole
> applicants is consistent with parole policies established
> by the Legislature. (citation)  While courts must give
> great weight to the Board's interpretation of the parole
> statutes and regulations, final responsibility for inter-
> preting the law rests with the courts. (citation) Courts
> must not second-guess the Board's evidentiary findings
> (citation).  However, it is the proper function of judicial
> review to ensure the Board has honored in a 'practical
> sense' the applicants right to 'due consideration'."
> (citation) In re Ramirez (2001) 94 Cal.App.4th 549,564.

**A. There is not "some evidence" to support the Board's decision that petitioner currently poses an unreasonable risk of danger to society.**

According to state and federal law, parole decisions must be supported by some evidence and that evidence must have an "indicia of reliability" In re Rosenkrantz (Id.); Biggs v. Terhune (9th Cir., 2003) 334 F.3d 910,915. More specifically, "suitability determinations must have some rational basis in fact." In re Elkins (2006)___Cal.Rptr.3d___2006 WL3072139.

It is important that the some evidence standard be properly understood. First, the some evidence standard is an additional requirement of due process, not the only requirement Edwards v. Balisok (1997) 520 U.S. 641,648.  Second, the courts are not to look only at whether some evidence supports the Board's application of any given criteria, but whether the Board's decision contains some evidence that an inmate currently poses an unreasonable risk of danger to society In re Lee (2006)___Cal.Rptr.3d___2006 WL 2947968, p.4; In re Elkins (2006)___Cal.Rptr.3d___2006 WL 3072139, p.12.

As stated in Rosenkrantz, "the governing statute provides the Board must grant parole unless it determines that public safety requires a lengthier period of incarceration for the individual because of the gravity of the offense underlying the conviction.  (Citation)  And as set forth in the governing regulations, the Board must set a parole date for a prisoner unless it finds, in the exercise of its judgement, after considering the circumstances enumerated in section 2402 [or 2281] of the regulations, that the prisoner is unsuitable for parole." In re Rosenkrantz (2002) 128 Cal.Rptr. 114,138. Hence, as required by our state supreme court, the Board must set a parole date unless a prisoner is found unsuitable for parole as specified by statute or regulation.

In making the section 3041(b) suitability determination, the Board must consider "[a]ll relevant, reliable information" (CCR §2281(b)), including the

1    nature of the commitment offense and behavior before, during, and after the

2    crime; the prisoner's social history; mental state; criminal record; attitude

3    towards the crime; and parole plans (CCR §2281(b)).  The Circumstances tending

4    to show unsuitability for parole include that the inmate 1) Committed the offense

5    in a particularly heinous, atrocious, or cruel manner; 2) possesses a previous

6    record of violence; 3) has an unstable social history; 4) has previously

7    sexually assaulted another individual in a sadistic manner; 5) has a lengthy

8    history of severe mental problems related to the offense; and 6) has engaged in

9    serious misconduct while in prison (CCR §2281(c) (1)(2)(3)(4)(5) & (6).

10    At petitioner's 2006 parole hearing, the Board denied petitioner a parole

11    release date because 1) The offenses were carried out in an especially cruel and

12    callous manner; 2) There were multiple victims attacked and injured, and killed

13    in separate instances; 3) The offenses were carried out in a manner which

14    demonstrates an exceptionally callous disregard for human suffering; 4) The

15    motive for the crimes were very trivial in relation to the offenses; 5) There

16    is an escalating pattern of criminal conduct and violence; 6) [Petitioner has]

17    a history of unstable and tumultuous relationships; 7) [Petitioner has] failed

18    previous grants of parole or society's previous attempts to correct [his

19    criminality]; 8) [Petitioner has] five serious CDC 115 disciplinaries, four

20    for violence, one for alcohol; and .9) The most recent psychological report is

21    not supportive of release (Exhibit 46, pp.99-106).  These factors, however,

22    either lack support, are not specified by regulation, or do not serve as

23    evidence that petitioner currently poses an unreasonable risk of danger to

24    society.

25    CCR §2281(c)(1) identifies five circumstances (or factors) that indicate

26    unsuitability, and the first five reasons cited by the Board to deny petitioner

27    parole fall under this regulation.  These reasons cited by the Board, however,

28    do not constitute "some evidence" that petitioner currently poses an

13

1   unreasonable risk of danger to society.  While it's true petitioner's

2   offenses involve multiple victims who were attacked, injured or killed in

3   the same or separate incidents (CCR §2281(c)(1)(A)), the offenses are so old

4   now (i.e., over 28½ years at the time of the hearing) that they lack the

5   "intercia of reliability" to indicate that petitioner still poses a current,

6   credible danger (see, for example, In re Elkins, Id. at p.12, holding "the

7   predictive value of the commitment offense may be very questionable after a

8   long period of time. (Citation)").  Furthermore, there is no evidence that

9   petitioner committed his offenses in a dispassionate and calculated manner

10  such as an execution style murder (CCR §2281(c)(1)(B)).  The only offense in

11  which petitioner actually shot and killed someone was the murder of Laura

12  Stoughton, and there is no evidence that petitioner "bound, cuffed, gagged,

13  blindfolded", or forced Laura Stoughton "to assume a position from which she

14  was unable to resist or flee", or "shot her in the back of the head", which

15  are the essential elements of an execution style murder.  The CYA Referral

16  Report states that petitioner and his crime partner "pumped rifle shells into

17  Laura Stoughton's body as she knelt holding a crucifix" (Exhibit 5, p.6).

18  This statement, however, is completely false.  The statement was made by a

19  CYA counselor who based his report on what appears to be police reports of

20  the original indictment (Exhibit 5, pp.2,4).  Yet nowhere does the counselor

21  state that the actual police reports themselves make this statement.  More

22  significantly, petitioner's crime partner never shot Laura Stoughton (Exhibit

23  8; Exhibit 6, p.4) which clearly shows the statement is false.  In citing

24  this particular regulation, in fact, the Board stops short of describing

25  petitioner's offense as an execution style murder which is a misapplication

26  of the regulation.  As stated in Rosenkrantz, the Board can deny parole only

27  if the circumstances of the offense meet the specified criteria as outlined

28  in the regulations (In re Rosenkrantz, Id.).

Additionally, there is no evidence that petitioner carried out the offenses in a manner which demonstrates an exceptionally callous disregard for human suffering (CCR §2281(c)(1)(D)). The offense by which petitioner's actions are to be judged is the murder of Laura Stoughton because petitioner did not use a firearm during, or actually commit, the murder of Aubrey Duncan (Exhibits 2,3, and 8). Although it's true a prisoner may be legally culpable for the acts of his companion, his suitability for parole must be based on his actions In re Ramirez, supra, 94 Cal.App.4th at 570; In re Smith (2003) 109 Cal.App.4th 489,504. Given this criteria, there is no evidence that petitioner "tormented, terrorized, or injured" Laura Stoughton before deciding to shoot her; or that petitioner "gratuitously increased or unnecessarily prolonged" her pain and suffering In re Smith (2003) 114 Cal.App. 4th 343. Even if petitioner's actions in the Duncan murders were able to be relied on, petitioner is alleged to have only driven the car and ripped a key ring from the belt loop of Aubrey Duncan after petitioner's crime partner, Brett Thomas, shot Mr. Duncan (Exhibit 8). The District Attorney's 1203.01 statement alleges that petitioner stepped on the gas to muffle gun shots (Exhibit 7), which petitioner denies, but even if that were true that fact would not make petitioner's actions particularly egregious, but would indicate only that the murder was premeditated, which is the minimum necessary to sustain a conviction for first degree murder, not a factor of aggravation (see In re Dannenberg (2005) 34 Cal.4th 1061,1098, holding to deny parole under the exceptionally callous or cruel factor there must be some evidence that the prisoner engaged in conduct apart and beyond the minimum necessary to convict him of first degree murder or that indicates the prisoner cruelly or callously exacerbated the victim's suffering).

Although petitioner denies the validity of the District Attorney's 1203.01 statement (Exhibit 17, p.9; Exhibit 18), even if it were true the record

1  would still be devoid of aggravated conduct.  The District Attorney's

2  reference to an attempted rape, for example, is evidence only that petitioner's

3  crime partner, Brett Thomas, made such a statement, not that an attempted

4  rape actually occurred (Exhibit 7).  Petitioner has established, in fact,

5  that there is no evidence of an attempted rape (Exhibits 10, 11, and 46, p.89).

6  The District Attorney's assertion that Laura Stoughton was praying for her

7  life is not indicative of aggravated conduct either.  The District Attorney

8  states she was praying for her life, not that she was on her knees, clutching

9  a rosary, praying for her life (Exhibit 7).  Furthermore, while petitioner

10  denies the validity of this statement (Exhibit 17, p.3), even if it were true,

11  the fact that Laura Stoughton may have been praying for her life is not

12  something that would not normally occur in any kidnap-murder.  As petitioner

13  pointed out in his proceedings challenging his 2001 parole hearing, if he had

14  been kidnapped and placed in the trunk of a car and driven to a remote area,

15  he probably would have been praying for his life too, irregardless of whether

16  anyone had ever told him that he was going to be killed.  The fact is, even

17  if the District Attorney's 1203.01 statement is assumed true, it only

18  describes the callousness of the offense, not aggravating conduct.

19      The Board's assertion that the motive for petitioner's offense is trivial

20  (CCR §2281(c)(1)(E)) is also without merit.  As stated in the records,

21  petitioner admitted that he killed Laura Stoughton because his crime partner

22  had been recently photographed by the Garden Grove Police Department (the

23  same city where Laura Stoughton resided), and they were afraid that Laura

24  Stoughton might be able to identify him which could result in them being

25  apprehended for kidnapping, a life offense (Exhibit 6, p.9).  Petitioner's

26  2006 Life Prisoner Evaluation Report also lists as an aggravating factor that

27  the murder was committed to prevent the detection of another crime (Exhibit 13,

28  p.4).  As stated in Scott, however, "to fit the regulatory description [of

1  the unsuitability guideline as described in CCR §2281(c)(1)(E)] the motive

2  must be materially less significant (or more 'trivial') than those which

3  conventionally drive people to commit the offense in question." In re Scott

4  (2004) 119 Cal.App.4th 871,884.  Committing murder to prevent being

5  apprehended for another crime, though callous and offensive, is not an

6  uncommon motive.  Hence, the application of CCR §2281(c)(1)(E) to the facts

7  of petitioner's case is clearly not appropriate.

8       There also is no evidence that petitioner has an escalating pattern of

9  violence (CCR §2281(c)(2)).  As petitioner stated during the hearing (Exhibit

10  46, pp.26-28) and in his previous appeals (Exhibit 17, p.9), petitioner has

11  not been convicted of assault with intent to commit murder, or threatening a

12  juvenile hall counselor (Exhibit 12), which are the charges the Board is relying

13  on to establish that petitioner has a previous history of violence.  In the

14  Board's response to petitioner's BPT 1040 appeal of his 2003 parole hearing, in

15  fact, the Board admitted that it based this finding on petitioner's current

16  convictions, not petitioner's previous record, which is a complete misapplication

17  of CCR §2281(c)(2) (see Exhibit 17, p.2).  Were the Board able to rely on

18  current convictions to establish that a prisoner has a previous record of

19  violence, then every prisoner would meet the criteria of that regulation.

20  More significantly, even if it were assumed that petitioner did in fact

21  assault another with intent to commit murder and threatened a juvenile hall

22  counselor, petitioner still would not meet the criteria of CCR §2281(c)(2).

23  As the regulation states, a prisoner must have "on previous occasions (i.e.,

24  more than once) inflicted or attempted to inflict serious injury on a victim."

25  Threatening a counselor can in no way be considered an attempt to inflict

26  serious injury on a person and, thus, petitioner does not meet the criteria

27  of CCR §2281(c)(2) (see also In re Van Houton (2004) 116 Cal.App.4th 339,353,

28  holding inmate's previous arrest record did not constitute some evidence of

1  threat to public safety because alleged acts did not involve serious injury

2  or attempted serious injury to a victim."

3      The record also lacks evidence that petitioner has a history of unstable

4  and tumultuous relationships (CCR §2281(c)(3)).  The primary figure that

5  petitioner had what might be characterized as a tumultuous relationship with

6  was his father (Exhibit 5, pp.6-8,13; Exhibit 6, p.12; Exhibit 13, p.5) and,

7  as pointed out in Cortinas one unstable relationship doesn't constitute

8  some evidence of a history of unstable relationships In re Cortinas 2004 DJDAR

9  5786,5792.  More importantly, even if it were true that petitioner

10 experienced tumultuous relationships some 28 years ago, it wouldn't indicate

11 that petitioner currently poses a danger to society, especially in the face

12 of more current evidence indicating petitioner has no problems relating with

13 others (see, for example, Exhibits 37 and 40) In re Lee (2006)___Cal.Rptr.___3d

14 2006 WL 2947968, p.4.

15     The Board's reliance on petitioner's failure at previous grants of parole

16 (reason #8) and his past disciplinaries (CCR §2281(c)(6)) also do not serve

17 as evidence that petitioner currently poses a danger to society In re Lee

18 (Id. at p.4).  Petitioner's failure at previous grants of probation or parole

19 is not a "circumstance" (or factor) of "unsuitability" and occurred over three

20 decades ago, when petitioner was fourteen, fifteen, sixteen, and seventeen

21 years old, and can no longer be regarded as "relevant, reliable information"

22 (CCR §2281(b)).  The same may be said about petitioner's past disciplinaries,

23 four for violence (i.e., fist fights), one for alcohol, which were over two

24 decades old (20 years) at the time of the hearing.  As petitioner pointed

25 out to one of the Board members, not a lot of prisoners can claim they came to

26 prison at age 17, served over 28½ years, and remained disciplinary free

27 (Exhibit 46, pp.74-75), especially given the dark, violent, brutal nature

28 of prison life (Exhibit 44).

1    Finally, there is no evidence that petitioner has a "lengthy history

2    of severe mental problems related to the offense" (CCR §2281(c)(5)).  At

3    petitioner's 2006 parole hearing, the Board determined that petitioner's

4    most recent psychological report is not supportive of release (Exhibit 46,

5    pp.100-102).  Petitioner disagrees.  Forensic Psychiatrist John C. Preston,

6    M.D., writes in petitioner's 2006 Mental Health Evaluation

7            "It is my opinion that Mr. Titch poses a less than average
             risk of violence in the structured setting as compared to
8            other inmates in this institution...In the event of release
             to the community, it is my opinion that he will continue
9            to present a less than average risk of violent behavior."
             (Exhibit 19, p.5).

10

11   Dr. Preston  also diagnoses petitioner as "Antisocial Personality Disorder,

12   by hx" (meaning by history only, not currently, Exhibit 19, p.4) and states

13           "I do not believe that mental health issues will necessarily
             be the deciding factor in terms of deciding when Mr. Titch
14           is appropriate for parole." (Exhibit 19, p.6)

15   Other state documentation indicates petitioner does not have a "severe mental

16   disorder related to the offense", as CCR §2281(c)(5) requires.  In petitioner's

17   1992 Psychiatric Evaluation, Forensic Psychiatrist John Hirschberg, M.D., states

18           "There is no history of mental illness" (Exhibit 24, p.1),
             concluding "there is no emotional mental illness to be
19           treated, which means in essence, mental health reports may
             not significantly affect his parole status.  It would
20           seem, therefore, that the decision to parole would have to
             depend on factors other than psychological." (Exhibit 24,
21           p.2).

22   In petitioner's 1995 Psychological Evaluation, Forensic Psychologist Edwin

23   P. Jenesky, Ph.D, diagnoses petitioner as "Antisocial by History" and states

24           "The diagnosed psychopathology, i.e., an antisocial personality
             disorder, although not considered a major mental illness, has
25           been directly related to criminal behavior." (Exhibit 23, p.2).

26   In petitioner's second 1995 Psychological Evaluation, Forensic Psychologist

27   Scott Smith, Ph.D., diagnosed petitioner as "Antisocial Personality Disorder"

28   and states

19

1       "It seems safe to say that Mr. Titch has, at this point,
      a considerable amount of ego strength, which indicates
2       that he has the ability to exercise self-control, should
      he so choose.  The other, more complicated consideration
3       is the attempt to assess whether he will, in fact, choose
      to refrain from violence after release.  First and foremost,
4       the best prognostic indicator for future conduct is past
      conduct, particularly over the past two years.  There is
5       no documented evidence that Mr. Titch has engaged in any
      violent behavior at CDC for over nine years." (Id.)

6

7 Dr. Smith goes on to conclude

8       "Mr. Titch appears to have improved greatly during his time
      in the custody of CDC.  In a less controlled setting, such
9       as return to the community, he may continue to hold most of
      his present gains, particularly if he refrains from use of
10       alcohol and/or drugs.  Also, it is the opinion of this writer
      that Mr. Titch has probably realized most, if not all, of
11       the improvement that he is likely to experience in the
      custody of CDC.  As of the current interview, Mr. Titch did
12       not appear to be suffering from any major psychiatric
      disorder, and there is no evidence that this has ever been
13       an issue for him.  Any decisions related to his parole should
      be based upon other criteria." (Id.).

14

15 Finally, in petitioner's 2000 Psychological Evaluation, Forensic Psychologist

16 Alvin Chandler, Ph.D., states

17       "There does not appear to be any current diagnostic concerns
      for this inmate as far as a serious mental disorder...There
18       are no reported historic psychiatric concerns." (Exhibit 20,
      p.4).

19

20 Hence, as the record clearly demonstrates, there is no evidence that petitioner

21 meets the criteria of CCR §2281(c)(5).

22     As the above facts and arguments indicate, the Board's decision is

23 arbitrary and capricious and violates due process, as guaranteed by both state

24 and federal Constitutions, because there is no evidence that petitioner

25 currently poses an unreasonable risk of danger to society In re Rosenkrantz

26 (Id.); McQuillion v. Duncan (Id.); Biggs v. Terhune (Id.).  Moreover, the

27 Board's decision violates due process because it also deprives petitioner of

28 the benfits of the state penal statutes which he is sentenced to Hicks v.

1   Oklahoma (1980) 447 U.S. 343.  Additionally, the Board's decision violates

2   due process because it does not conform with the Board's own regulations

3   (see, for example, Vargas v. U.S. Parole Commission (9th Cir., 1988) 865

4   F.2d 191, pp.193-194, holding parole boards are bound to follow their own

5   regulations and...these regulations have the force of law; and Ellard v.

6   Alabama Board of Pardons and Paroles (11th Cir., 1987) 824 F.2d 937,943,

7   holding "[T]he Due Process clause...prohibits the states from negating by

8   their actions rights they have conferred by their words.").

9   **B.  The Board's decision is inapposite to the record.**

10       The Board's decision is arbitrary and capricious and abrogates due

11   process because it is inapposite to the record that was before them.  As the

12   record clearly shows, during petitioner's 28-plus years of incarceration

13   he has undergone substantial change for the better and no longer presents

14   a current danger to society.  Vocationally and educationally, petitioner has

15   obtained training in Drafting (Exhibit 36, p.3); Offset Printing (Exhibit 37,

16   p.3); Welding, Carpentry, Masonry, and as an Apprentice Electrician (Exhibit

17   37, pp.1-2); he learned how to operate heavy equipment (Exhibit 37, p.1);

18   and he acquired his High School Diploma, an Associate of Arts Degree, and is

19   currently 21 units short of a Bachelors degree in Business Administration

20   (Exhibit 36, pp.1-2).  Petitioner has completed, and continues to participate

21   in, various self-help groups such as Alcoholics Anonymous, the Rapha 12-Step

22   Program, Basic and Advanced courses in "Conflict Resolution", biblical

23   courses in "Self-Confrontation", "Purpose Driven life", and "Kairos", and

24   the Match 2 (M2) Program (Exhibit 41).  Petitioner has also volunteered his

25   time to help other inmates learn how to read and write (Exhibit 41, p.25);

26   participated in Walk-A-Thons to help raise money for abused children (Exhibit

27   41, pp.22-24); and helped train other inmates in Offset Printing (Exhibit 37,

28   p.3).  Additionally, petitioner has not received a serious CDC-115 disciplinary

21

write-up for 20-plus years (Exhibit 13, pp.5-6) and has acquired numerous

laudatory chronos, denoting his exemplary behavior and conduct (Exhibit 37).

More significantly, petitioner has been forensicly evaluated as posing "a

less than average risk of violent behavior" if released to the community in

his most recent mental health evaluation (Exhibit 19, p.5).

The arbitrariness of the Board's decision becomes even clearer when

examining the "Circumstances Tending To Show Suitability" as described in

CCR §2281(d):  Petitioner does not have a record of assaulting others as a

juvenile or committing crimes with a potential of personal harm to victims

(CCR §2281(d)(1); Exhibit 12).  Petitioner has experienced reasonably stable

relationships with others (CCR §2281(d)(2); Exhibits 37 and 40).  Petitioner

has shown signs of remorse by indicating that he understands the nature and

magnitude of the offenses (CCR §2281(d)(3); Exhibit 13, p.8; Exhibit 14, p.3;

Exhibit 15, p.7; Exhibit 20, p.3,5).  Petitioner committed his crimes as the

result of significant stress in his life as indicated by growing up with

an alcoholic father, an unloving mother, and a life on the streets, starting

at age 12 (CCR §2281(d)(4).  Petitioner lacks any significant history of

violent crime (CCR §2281(d)(6); Exhibit 12).  Petitioner's present age (i.e.,

47) reduces the probability of recidivism (CCR §2281(d)(7)).  Petitioner has

made realistic plans for release (Exhibits 39 and 40) and developed marketable

skills that can be put to use upon release (CCR §2281(d)(8)).  And petitioner's

institutional activities indicate an enhanced ability to function within

the law upon release (CCR §2281(d)(9)).  In short, petitioner meets every

circumstance tending to show suitability except for CCR §2281(d)(5),

"Battered Woman Syndrome" which doesn't apply to him.

In Rosenkrantz, the state supreme court states, "It is irrelevant that a

court might determine that evidence in the record tending to establish

suitability for parole far outweighs evidence demonstrating unsuitability

1  for parole."  In re Rosenkrantz, supra, 128 Cal.Rptr.114,156.  Petitioner

2  disagrees.  As stated in Greenholtz, "[t]he behavior of an inmate during

3  confinement is critical in the sense that it reflects the degree to which

4  the inmate is prepared to adjust to parole release."  Greenholtz v. Nebraska

5  Penal Inmates (1979) 442 U.S. 1, 15.  More importantly, the ultimate

6  question to be determined by the Board is whether or not a prisoner

7  currently poses an unreasonable risk of danger to society.  A reformed

8  prisoner can in no way be regarded as a danger or threat to the public, and

9  if a prisoner isn't a current danger than parole must be granted (Penal

10 Codes 3041(a) and 3041(b)).

11      Another way in which the Board's decision is arbitrary and capricious

12 and inapposite to the record is that it fails to consider petitioner's age

13 at the time he committed his offenses as a mitigating factor.  Petitioner

14 committed his crimes when he was a juvenile and was subsequently prosecuted

15 and sentenced as an adult.  As pointed out in Rosenkrantz v. Marshall, the

16 "predictive value of a young person is less than that of an adult" (Exhibit

17 51, p.42) and there is a greater possibility that minors can be reformed.

18 Citing U.S. Supreme Court law, the District court states

19     "The susceptibility of juveniles to immature and
       irresponsible behavior means 'their irresponsible
20     conduct is not as morally reprehensible as that of
       an adult.' Thompson v. Oklahoma, 487 U.S. 815,835
21     (1988) (plurality opinion).  Their own vulnerability
       and comparative lack of control over their immediate
22     surroundings mean juveniles have a greater claim
       than adults to be forgiven for failing to escape
23     negative influences in their whole environment. See
       Stanford v. Kentucky, 492 U.S. 361,395 (1989) (Brennan
24     J., dissenting).  The reality that juveniles still
       struggle to define their identity means it is less
25     supportable to conclude that even a heinous crime
       committed by a juvenile is evidence of irretrievably
26     depraved character.  From a moral standpoint it would
       be misguided to equate the failings of a minor with
27     those of an adult for a greater possibility exists
       that a minor's character deficiencies will be reformed.
28     Indeed, '[t]he relevance of youth as a mitigating

23

factor derives from the fact that the signature qualities of youth are transient; as individual's mature, the impetuousness and recklessness that may dominate younger years can subside.' <u>Johnson v. Texas</u>, 509 U.S. 350,368 (1993)." (Exhibit 51, pp.42-43).

Finally, the Board's decision is also inapposite to the record because it ignores the "Matrix of Base Terms for First Degree Murder" as provided in CCR 2282(b).(Exhibit 1, p.4). Given the circumstances of petitioner's committment offense, petitioner falls under categories "C-III" on the Matrix (i.e., "Severe Trauma with No Prior Relationship") which gives a suggested Base Term of 14-16-18 years. At the time of the hearing, however, petitioner had already served 28-plus years. True, the gravity of the offense can serve as the sole reason for denying parole, especially if the offense is particularly egregious (<u>Ramirez</u>, Id.), or the offense involves conduct apart and beyond the minimum necessary to sustain a conviction for first degree murder (<u>Rosenkrantz</u>, <u>Dannenberg</u>, Id.) Yet as petitioner has already demonstrated, his conduct during the offenses cannot be regarded as particularly egregious. More importantly, even a particularly egregious offense has its limits. Consider, for example, the case of <u>Rosenkrantz</u>. The egregiousness of Rosenkrantz's crime <u>as a second degree murder</u> justified denying his parole, but as the state supreme court cautioned once Rosenkrantz reaches the point where he is serving time for first degree murder denying his parole would be questionable, even under the deferential "some evidence" standard <u>In re Rosenkrantz</u>, supra, 128 Cal.Rptr. at pp.166-167. In fact, the state supreme court explicitly stated

"The Board's authority to make an exception [to the setting of a parole date] should not operate so as to swallow the rule that parole is normally to be granted. Otherwise, the Board's case-by-case rulings would destroy the proportionality contemplated by Penal Code 3041, subdivision (a), and also by the murder statutes, which provide distinct terms of life without possibility of parole, 25 years to life, and 15 years to life for various degrees and kinds of murder." (Id. at p.161)

1  Even if petitioner's offenses were considered egregious as a first degree

2  murder involving severe trauma, his offenses couldn't be considered

3  egregious as a first degree murder involving torture (since none of his

4  offenses contain elements of torture), yet petitioner has now surpassed

5  the maximum base term (i.e., 22 years; Exhibit 1, p.4) recommended for a

6  murder of that classification.  Furthermore, after long periods of time, the

7  egregiousness of the offense loses its weight and, at some point, may even be

8  illogical to use as justification for denying parole.  As cited in federal

9  law.

10         "It is simply irrational for [the] seriousness of the
           offense to be used first to determine the appropriate
11         guideline period and then to be used again as stated
           reason for confining a prisoner beyond that guideline
12         period." Lupo v. Norton, 371 F.Supp 156,163.  (See
           also Diaz v. Norton, 376 F.Supp 112 at 115 stating,
13         relying on the seriousness of the offense "beyond the
           appropriate guideline...would not be appropriate
14         because the guideline table (matrix) already assesses
           the seriousness of the offense."

15

16  Hence, as the above facts and arguments demonstrate, the Board's decision is

17  arbitrary and capricious and violates due process because it is inapposite

18  to the record that was before them during the hearing.

19      C.  The Board's decision lacks a rational nexus between the
            factors cited and petitioner's current parole risk.

20

21      As stated at the outset of this Ground, "suitability determinations must

22  have some rational basis in fact."  In re Elkins (2006)___Cal.Rptr.3d___2006

23  WL 3072139, p.7.  Accordingly, parole decisions must be more than a

24  "mouthing of conclusionary words" and have a "reliable factual underpinning"

25  In re Scott (2004) 119 Cal.App.4th 871 (see also In re Smith (2003) 114 Cal.

26  App.343,371, holding Board decisions are arbitrary when no "chain of

27  reasoning" exists between "immutable factor of past drug use and current

28  parole risk in view of long period of abstinence.").  Federal law concurs.

1  In Dunn, for example, the Tenth Circuit struck down a decision by the U.S.

2  Parole Commission on the grounds that it was arbitrary for the commission to

3  rely on 18-year-old insanity plea to deny parole, particularly when current

4  mental health evaluation stated prisoner had no current mental illness Dunn

5  v. U.S. Parole Commission (10th Cir., 1987) 818 F.2d 742,745 (see also

6  Montoya v. U.S. Parole Commission (10th Cir., 1990) 908 F.2d 635, pp.639-640).

7      A rational nexus may exist, for instance, if a prisoner committed an

8  offense while he was in a gang and current evidence in the record shows that

9  he is still an active gang member or engaging in gang activities; or if a

10  prisoner committed his offense while addicted to drugs and current evidence

11  in the record shows that his addiction is not in remission or he recently

12  used drugs.  But in the present case before the court, there is no evidence

13  that such a nexus exists.  On the contrary, the reasons cited by the Board

14  to support its conclusion that petitioner currently poses an unreasonable risk

15  of danger to society defies logic.  The decision alleges that petitioner is

16  currently an unreasonable risk of danger because he committed his offense

17  in a cold,dispassionate manner (28-plus years ago); committed multiple

18  offenses (28-plus years ago); allegedly developed an escalating pattern of

19  violence (28-plus years ago); received disciplinary write-ups for violence

20  (20-plus years ago); and the like.  Yet the record shows that petitioner

21  hasn't committed a single act of violence for more than 20 years; meets

22  every single criteria for suitability; and has been forensicly evaluated as

23  posing a "less than average risk of violent behavior" if released to the

24  community.  Additionally, the decision alleges that petitioner currently

25  poses an unreasonable risk of danger to society because, 30 years ago, he

26  experienced a tumultuous relationship with his father.  Yet the record shows

27  that for more than two decades petitioner has related well with others,

28  gained the respect of his peers and supervisors, and developed new,

1    meaningful, lasting relationships with people on the outside, in spite of

2    his disadvantage of being in prison.  The Board's reasons for denying

3    petitioner's parole, in fact, clearly meets the definition of "arbitrary",

4    as defined by the Ninth Circuit Court of Appeals, when it stated

5            An agency has acted in an arbitrary and capricious manner
         if "the agency has relied on factors that Congress has not
6        intended it to consider, entirely failed to consider an
         important aspect of the problem, offered an explanation for
7        its decision that runs contrary to the evidence before the
         agency, or is so implausible that it could not be ascribed
8        to a difference in view or the product of the agency
         expertise."  Environmental Defense Ctr., Inc. v. EPA (9th
9        Cir., 2003) 344 F.3d 832, 858.

10   More importantly, according to regulation, parole is to be denied only if

11   petitioner currently poses an <u>unreasonable</u> risk of danger to society

12   (CCR §2281(a)).  Is a prisoner who has spent the majority of his nearly

13   three decades in prison developing himself vocationally, educationally,

14   spiritually, and psychologically; who hasn't engaged in any violence for over

15   twenty years; who has developed a job offer and outside support; and who

16   not only has surpassed the maximum suggested time for his particular

17   classification of murder but also for the worst classification of murder

18   possible really be deemed an <u>unreasonable</u> risk of danger to society?

19   Petitioner thinks not.  Hence, as the above facts and arguments indicate,

20   the Board's decision is arbitrary and capricious and violates due process

21   because there is no rational nexus between the reasons cited for denying

22   parole and petitioner's current parole risk.

23

24

25

26

27

28

**GROUND #3:    THE BOARD'S CONTINUAL DENIAL OF PETITIONER'S PAROLE, BASED ON UNCHANGING, STATIC FACTORS, AND CONTRARY TO SUBSTANTIAL CHANGE FOR THE BETTER CONVERTS PETITIONER'S TERM OF LIFE WITH THE POSSIBILITY OF PAROLE TO LIFE WITHOUT THE POSSIBILITY OF PAROLE AND VIOLATES DUE PROCESS AS GUARANTEED BY BOTH STATE AND FEDERAL CONSTITUTIONS**

As previously stated, California life-term inmates have a liberty interest entitled to protection under the Due Process clause of the state and U.S. Constitutions In re Rosenkrantz (Id.), McQuillion v. Duncan (Id.), Biggs v. Terhune (Id.).  When an individual has a liberty interest protected by the Fourteenth Amendment, it cannot be arbitrarily denied by State government Vitek v. Jones (1980) 445 U.S. 480, pp.488-489; Greenholtz v. Nebraska Penal Inmates (1979) 442 U.S. 1; Morrissey v. Brewer (1972) 408 U.S. 471.  Accordingly, "[P]risoners are entitled to be free from arbitrary actions of prison officials that affect their constitutionally protected interests." Wolff v. McDonnell (1974) 418 U.S. 539,558; Hewitt v. Helms (1983) 459 U.S. 460, 466; see also Superintendent v. Hill (1985) 472 U.S. 445, 457, holding a decision by prison officials cannot be "without support" or arbitrary.  The California Supreme Court concurs, recognizing that Board decisions not based on evidence or relevant factors may deny prisoners their due process rights In re Dannenberg (2005) 34 Cal.4th 1061,1071.  Thus, the touchstone of Due Process is protection of the individual against arbitrary action of government Wolff v. McDonnell, supra, 418 U.S. at 558.

According to the state penal statutes, parole "shall normally" be granted unless a prisoner currently poses an unreasonable risk of danger to society (Penal Codes §§3041(a) and 3041(b)).  At petitioner's 2006 parole hearing (and petitioner's ninth appearance before the Board), petitioner presented a plethora of evidence that he has undergone substantial change for the better and does not currently pose a danger to society.  Yet in spite of this showing, petitioner was denied parole primarily on outdated, unchanging factors such

as the nature and number of petitioner's offenses; his alleged history of

violence; his past failure at previous grants of probation or parole; his

alleged history of tumultuous relationships; his past disciplinaries, etc..

[Note:  The only reason cited by the Board to deny parole that isn't a

static factor is petitioner's most recent psychological evaluation.  However,

that reason must be excluded because it does not meet the criteria of

unsuitability as required in CCR §2281(c)(5), nor is the report unfavorable

as the Board claims.  Also, the Board has a history of discounting petitioner's

favorable psychological evaluations.  In 1992, for example, the Board said

Dr. Hirshberg's mental health evaluation, which was favorable, was

inconclusive (Exhibit 32, p.6); and in 1995, the Board didn't even mention

Dr. Smith's report which was also favorable (Exhibit 31)].

The Ninth Circuit addressed the constitutional propriety of the Board's

reliance on the commitment offense and other static factors (particularly

pre-commitment factors) in Biggs v. Terhune (9th Cir., 2003) 334 F.3d 910.

Biggs was convicted of first degree murder and challenged the Board's

decision denying his parole at his initial hearing.  Although the Ninth

Circuit found no evidence to support most of the Board's grounds for

unsuitability, the court nevertheless affirmed the Board's decision,

reasoning "the parole board's sole reliance on the gravity of the offense

and conduct prior to imprisonment to justify denial of parole can be

initially justified as fulfilling the requirements set forth by state law."

(Id. at 916).  The Ninth Circuit cautioned, however, that "Over time...

should Biggs continue to demonstrate exemplary behavior and evidence of

rehabilitation, denying him a parole date simply because of the nature of

his offense would raise serious questions involving his liberty interest."

(Id.).  The Ninth Circuit also stated, "A continued reliance in the future

on an unchanging factor, the circumstance of the offense, and conduct

1  prior to imprisonment, runs contrary to the rehabilitative goals espoused

2  by the prison system and could result in a due process violation." (Id. at

3  917).

4      Although the Ninth Circuit did not hold when a due process violation

5  would occur, the California Courts of Appeal and several United States

6  District Courts have found that the Board's reliance on unchanging factors

7  and the commitment offense in certain cases violated due process (see, for

8  example, In re Elkins (2006) 144 Cal.App.4th 475,498, review denied Nov. 8,

9  2006 ["Given the lapse of 26 years and the exemplary rehabilitative gains

10 made by [the prisoner] over that time, continued reliance on [the]

11 aggravating facts of the crime no longer amount to 'some evidence' supporting

12 denial of parole."]; In re Lee (2006) 43 Cal.App.4th 1400,1409 ["Like the

13 Governor, we do not minimze the seriousness of Lee's offenses 19 years ago,

14 for which society has legitimately punished him.  No reasonable possibility

15 exists, however, that Lee will reoffend.  Other than his offenses here, he has

16 led a crime-free life."]; Id. at 1412 ["Simply from the passing of time,

17 Lee's crimes almost 20 years ago have lost much of their usefulness in

18 forseeing the liklihood of future offenses than if he had committed them

19 five or ten years ago."]; Irons v. Warden of Cal. State Prison-Solano (E.D.

20 Cal. 2005) 358 F.Supp.2d 936,947 ["In the instant case, the [Board] has

21 apparently relied on these unchanging factors at least four prior times in

22 finding petitioner unsuitable for parole.  Petitioner has continued to

23 demonstrate exemplary behavior and evidence of rehabilitation.  Under these

24 circumstances, the continued reliance on these factors at the 2001 hearing

25 violated due process."  Internal citations omitted. See Exhibit 49.];

26 Rosenkrantz v. Marshall (C.D. Cal. 2006) 444 F.Supp.2d 1063, 1081-1082 ["In

27 the circumstances of this case, the [Board's] continued reliance upon the

28 nature of petitioner's crime to deny parole in 2004 violated due process[.]

[C]ontinued reliance upon the unchanging facts of petitioner's crime makes a sham of California's parole system and amounts to an arbitrary denial of petitioner's liberty interest."  See Exhibit 51]; <u>Evans v. Carey</u> (E.D. Cal. 2006) WL 1867543 at 6 ["Although the Ninth Circuit in <u>Biggs</u> did not explicitly state when reliance on an unchanging factor would violate due process, it makes sense that reliance on such a factor becomes unconstitutional when the factor no longer has predictive value."]).

In <u>Elkins</u>, the prisoner was serving a sentence of twenty-five years to life after being convicted of first degree murder and robbery, with use of a deadly weapon (<u>Elkins</u>, supra, 144 Cal.App.4th at 479).  He had served twenty-six years (eleven years past his minimum eligible parole date) and had been denied parole at ten prior hearings (Id. at 499-500).  At his eleventh hearing, the Board granted Elkins parole, which the Governor subsequently reversed (Id.).  Elkins had received positive psychiatric evaluations, participated in self-help and vocational training, had realistic parole plans, and had only received two disciplinaries during his twenty-six years of incarceration.  (Id. at 483)  Both the Board denials and the Governor's reversal relied primarily on the gravity of his commitment offense (Id.).  The Elkins court vacated the Governor's decision holding that the Governor's decision to reverse the grant of parole based on the commitment offense lacked "some evidence" that Elkins posed an unreasonable risk of danger (Id. at 502).  The court held that the Governor's reliance on the remote immutable facts of the commitment offense violated Elkin's due process rights (Id. at 500).

In <u>Rosenkrantz v. Marshall</u>, the prisoner had been denied parole on six previous occasions on a sentence of seventeen years to life with the possibility of parole for a conviction of second degree murder with use of a firearm <u>Rosenkrantz v. Marshall</u>, supra, 444 F.Supp.2d at 1082. (See also

1   Exhibit 51).. The Board's rationale for finding him unsuitable was based

2   solely on the nature of the commitment offense (Id. at 1084).  However, the

3   court found that "[a]fter nearly twenty years of rehabilitation, the ability

4   to predict a prisoner's furture dangerousness based simply on the circumstances

5   of his or her crime is nil." (Id.)  The court held that, after such a long

6   period, the pre-commitment factors had lost all predictive value, and the

7   Board's continued reliance on them to deny parole violated due process

8   "because the facts surrounding the offense do not now constitute 'some

9   evidence' with some 'indicia of reliability' of petitioner's dangerousness."

10   (Id. at 1086).  The court ordered Rosenkrantz released on parole (Id. at 1087-

11   1088).

12      In Irons, the petitioner was serving a sentence of seventeen years to

13   life with the possibility of parole for second degree murder Irons v. Warden of

14   Cal. State Prison - Solano, supra, 358 F.Supp.2d 936,939 (see Exhibit 49).

15   In denying Irons parole, the Board relied on the circumstances of the

16   commitment offense, specifically, that he demonstrated callous disregard for

17   human life and the motive of the crime was trivial (Id. at 944).  The court

18   found that he had realistic parole plans, no juvenile record, and minimal

19   prior criminal history (Id.).  The court additionally found that the circumstances

20   of the crime could never change and therefore the Board could perpetually

21   deny parole forever, or at best, until some future panel arbitrarily found

22   that the crimes were not so callous or trivial (Id. at 947).  As the court

23   opined, a prisoner's "liberty interest should not be determined by such an

24   arbitrary, remote possibility." (Id.)  The court held that the Board's

25   continued reliance on the facts of the commitment offense violated due process

26   (Id.).

27      The facts of petitioner's case, although different from the Biggs,

28   Elkins, Rosenkrantz, and Irons cases, are in no way less compelling.

1   Petitioner has an exemplary record and has shown substantial change for the

2   better.  Vocationally and educationally, petitioner has obtained training in

3   Drafting, Offset Printing, Construction, Heavy Equipment, and nearly completed

4   a Bachelor degree in Business Administration (Exhibits 36 and 37).  Petitioner

5   has completed self-help groups and other positive programs and continues

6   to be actively involved in Alcoholics Anonymous (Exhibit 41).  Petitioner

7   has established realistic plans for release as evidenced by his job offer

8   and support letters (Exhibits 39 and 40).  And petitioner has been forensicly

9   evaluated as posing a "less than average risk of violent behavior" if

10  released to the community (Exhibit 19).  More significantly, petitioner has

11  appeared before the Board on nine separate occasions (the most recent being

12  23 years past his minimum eligible parole release date) and each time the

13  Board has relied on the same unchanging, static factors to deny parole,

14  including some reasons the Board should have never been using (see Exhibits

15  28 through 35).  If a prisoner's postconviction behavior doesn't carry any

16  weight and his current dangerousness is continually evaluated on the

17  unchanging circumstances of his offense and other static factors, then there

18  is no difference between life with the possibility of parole and life without

19  the possibility of parole.  A prisoner's offense, social and criminal history,

20  and behavior of more than two decades ago will never change, and using these

21  static factors as the measuring stick to gauge petitioner's current dangerousness

22  means he will always be labeled an unreasonable risk of danger to society.

23  Like the hamster that spends its time running on the turn-wheel and never

24  gets anywhere, petitioner will be forever completing one requirement or

25  positive program after another but never get any closer to release.  This

26  makes a mockery of the parole system and, as such, violates due process.

27      It might be argued that since petitioner has been scheduled for another

28  consideration hearing in 2008 he couldn't possibly be serving a sentence

33

of life without the possibility of parole, in which case, petitioner would

disagree.  While its true that under the ISL (which petitioner was

originally sentenced under), the Board placed a higher value on rehabilitation

and honored the law (regardless of a prisoner's commitment offense, Exhibit

42), this is no longer the case today.  As In re Rutherford (Exhibit 45),

Coleman v. BPT (Exhibit 48), and the Governor's policy of appointing

primarily law enforcement officials and former crime victims advocates to

the parole board clearly shows (Exhibit 44, pp.11-12), the Board routinely

disregards the law to follow its own "no parole" policy.  Current statistics

support this contention (Exhibit 42, pp.9-11; Exhibit 43; Exhibit 44, p.2)

as well as do the growing number of state and federal cases against the

Board and Governor In re Ramirez (2001) 94 Cal.App.4th 549; In re Smith (2003)

109 Cal.App.4th 489; In re Smith (2003) 114 Cal.App.4th 343; In re Scott (2004)

119 Cal.App.4th 871; In re Scott (2005) 133 Cal.App.4th 573; In re Elkins

(2006) 144 Cal.App.4th 475; In re Lee (2006) 143 Cal.App.4th 1400; Mcquillion

v. Duncan (9th Cir., 2002) 306 F.3d 895; Irons v. Warden of Cal. State Prison-

Solano (2005) 358 F.Supp.2d 936; Rosenkrantz v. Marshall (2006) 444 F.Supp.2d

1063; Evans v. Carey (E.D Cal. 2006) WL 1867543.  Call the sentence whatever

one likes, but for petitioner and many other life-term prisoners "life with"

is synonymous with "life without" and will remain so until the courts compel

the state to act otherwise (Exhibits 50 and 51).  Hence, as the above facts

and arguments clearly show, the Board's continual denial of petitioner's

parole, based on unchanging, static factors and contrary to substantial

change for the better, is arbitrary and capricious and violates due process

as gauranteed by both state and federal Constitutions.

34

**PRAYER FOR RELIEF**

Petitioner is without remedy save by Writ of Habeas Corpus.

**WHEREFORE**, having made a prima facie case for relief, petitioner prays that the court:

1) Issue the Writ of Habeas Corpus;

2) Issue an Order To Show Cause on respondents as to why relief should not be granted;

3) Make a determination as to whether respondents have violated petitioner's state or federal constitutional right to Due Process;

4) Upon any finding that respondents have unlawfully denied petitioner's liberty interest or violated petitioner's Due Process rights, order respondents to vacate the decision of petitioner's 2006 parole hearing, hold a new hearing within 30 days, and set petitioner's parole release date;

5) Grant any and all relief necessary to ensure the protection of petitioner's right to Due Process as guaranteed by the United States Constitution.

1

2

**VERIFICATION**

3      I _Mark Titch_ , do hereby declare the following:

4      I am the petitioner in this action.  I have read the foregoing

5      _Petition For Writ of Habeas Corpus_

6  and the facts stated therein are true of my own knowledge, except as to

7  matters that are therein stated on my own information and belief, and as to

8  those matters I believe them to be true.

9

10

11      I declare under penalty of perjury of both state and federal laws

12  that the foregoing is true and correct and that this declaration was

13  executed on _4/8/08_        at San Diego, California.

14

15

16

17

18                              /s/ _Mark W. Titch_
                                    Mark W. Titch,
19                                  Petitioner, Pro Se

20

21

22

23

24

25

26

27

28

### DECLARATION OF SERVICE BY MAIL

1
2
3    I _Charles LeGros_____, am a resident of the Richard J.

4    Donovan Correctional Facility, in the county of San Diego, in the state of

5    California.  I am over the age of eighteen (18) years, and I am not a party

6    to the enclosed action.  My state prison address is

7           Charles LeGros
           J-27329, F1-4-227
8          P.O. Box 799001
           San Diego, Ca  92179-9001

9

10   on _4-8-08_____, I served the foregoing _Petition_

11   _For Writ of Habeas Corpus_____

12   on the parties named herein below by placing a true copy thereof, enclosed in

13   a sealed envelope, with the postage thereon fully paid, in the United States

14   mail in a deposit box so provided at the prison facility, addressed as follows:

15

16           United States District Court
           Office of the Clerk
17         880 Front Street, Suite 4290
           San Diego, Ca  92101-8900

18

19

20

21   I declare under penalty of perjury of both state and federal law that the

22   foregoing is true and correct and that this declaration was executed on_____

23   _4-8-08_____ at San Diego, California.

24

25

26

27   /s/ _Charles LeGros_

28

37

JS44
(Rev. 07/89)

# CIVIL COVER SHEET

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE SECOND PAGE OF THIS FORM.)

## I (a) PLAINTIFFS

**Mark Titch**

2254    1983

**FILING FEE PAID**
Yes ____  No ✓

**IFP MOTION FILED**

**COPIES SENT TO**
Court ✓    Pro Se

Hernandez, et al

**FILED**

2008 APR 10  PM 3: 53

CLERK US DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

BY _____ DEPUTY

**(b) COUNTY OF RESIDENCE OF FIRST LISTED** San Diego
**PLAINTIFF**
(EXCEPT IN U.S. PLAINTIFF CASES)

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT
(IN U.S. PLAINTIFF CASES ONLY)

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND

**(c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)**

**Mark Titch**
**PO Box 799001**
**San Diego, CA 92179**
**B-89549**

ATTORNEYS (IF KNOWN)

**'08 CV 0654  J  WMC**

## II. BASIS OF JURISDICTION (PLACE AN x IN ONE BOX ONLY)

☐ 1 U.S. Government Plaintiff

☒ 3 Federal Question
(U.S. Government Not a Party)

☐ 2 U.S. Government Defendant

☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN X IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT
(For Diversity Cases Only)

| | PT | DEF | | PT | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. CAUSE OF ACTION (CITE THE US CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE. DO NOT CITE JURISDICTIONAL STATUTES UNLESS DIVERSITY).

### 28 U.S.C. 2254

## V. NATURE OF SUIT (PLACE AN X IN ONE BOX ONLY)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reappointment |
| ☐ Marine | ☐ 310 Airplane | ☐ 362 Personal Injury-Medical Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ Miller Act | ☐ 315 Airplane Product Liability | | ☐ 625 Drug Related Seizure of Property 21 USC 881 | **PROPERTY RIGHTS** | ☐ 430 Banks and Banking |
| ☐ Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 365 Personal Injury - Product Liability | ☐ 630 Liquor Laws | ☐ 820 Copyrights | ☐ 450 Commerce/ICC Rates/etc. |
| ☐ 150 Recovery of Overpayment &Enforcement of Judgment | ☐ 330 Federal Employers' Liability | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 640 RR & Truck | ☐ 830 Patent | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | | ☐ 650 Airline Regs | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | **PERSONAL PROPERTY** | ☐ 660 Occupational Safety/Health | **SOCIAL SECURITY** | ☐ 810 Selective Service |
| ☐ 153 Recovery of Overpayment of Veterans Benefits | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | ☐ 690 Other | ☐ 861 HIA (1395ff) | ☐ 850 Securities/Commodities Exchange |
| ☐ 160 Stockholders Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 371 Truth in Lending | **LABOR** | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge 12 USC |
| ☐ Other Contract | ☐ 360 Other Personal Injury | ☐ 380 Other Personal Property Damage | ☐ 710 Fair Labor Standards Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 891 Agricultural Acts |
| ☐ 195 Contract Product Liability | | ☐ 385 Property Damage Product Liability | ☐ 720 Labor/Mgmt. Relations | ☐ 864 SSID Title XVI | ☐ 892 Economic Stabilization Act |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act | ☐ 865 RSI (405(g)) | ☐ 893 Environmental Matters |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence Habeas Corpus | ☐ 740 Railway Labor Act | **FEDERAL TAX SUITS** | ☐ 894 Energy Allocation Act |
| ☐ 220 Foreclosure | ☐ 442 Employment | | ☐ 790 Other Labor Litigation | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 895 Freedom of Information Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/Accommodations | ☒ 530 General | ☐ 791 Empl. Ret. Inc. | ☐ 871 IRS - Third Party 26 USC 7609 | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 240 Tort to Land | ☐ 444 Welfare | ☐ 535 Death Penalty | ☐ Security Act | | ☐ 950 Constitutionality of State |
| ☐ 245 Tort Product Liability | ☐ 440 Other Civil Rights | ☐ 540 Mandamus & Other | | | ☐ 890 Other Statutory Actions |
| ☐ 290 All Other Real Property | | ☐ 550 Civil Rights | | | |

## VI. ORIGIN (PLACE AN X IN ONE BOX ONLY)

☒ 1 Original Proceeding  ☐ 2 Removal from State Court  ☐ 3 Remanded from Appellate Court  ☐ 4 Reinstated or Reopened  ☐ 5 Transferred from another district (specify)  ☐ 6 Multidistrict Litigation  ☐ 7 Appeal to District Judge from Magistrate Judgment

| **VII. REQUESTED IN COMPLAINT:** | ☐ CHECK IF THIS IS A CLASS ACTION UNDER f.r.c.p. 23 | DEMAND $ | Check YES only if demanded in complaint: JURY DEMAND: ☐ YES ☐ NO |
|---|---|---|---|

**VIII. RELATED CASE(S) IF ANY (See Instructions):**    JUDGE _____    Docket Number _____

DATE    April 10, 2008    SIGNATURE OF ATTORNEY OF RECORD