Mark Titch
B-89549, F1-04-227
P.O. Box 799001
San Diego, Ca   92179-9001

Petitioner, Pro Se



UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARK TITCH,<br>Petitioner, Pro Se<br><br>vs.<br><br>ROBERT J. HERNANDEZ,<br>Warden, RJDCF, et.al. | Case No. 08-CV-0654 J (WMc)<br><br>PETITIONER'S OPPOSITION (TRAVERSE)<br>TO RESPONDENT'S ANSWER |

TO THE HONORABLE WILLIAM McCURINE Jr.:

Petitioner, Mark Titch, submits the foregoing opposition (Traverse) to Respondent's Answer.

### ADMISSIONS

1. Petitioner admits that he has properly exhausted all of his claims in the state courts (Answer, paragraphs 2, 3, & 4); that his petition is timely filed (Answer, paragraph 5); and that he has met all standards and requirements of the Antiterrorism and Effective Death Penalty Act (AEDPA).

### DENIALS

2. Petitioner denies that he received a copy of the documents which Respondents lodged in support of their Answer. Petitioner acknowledges that he has his own copy of Respondent's lodgements, except for Lodgement 8, titled "Probation Officer's Report". If the probation officer's report is

from San Diego County, petitioner makes no objections. If Respondents are alleging that the probation officer's report is from Orange County, petitioner objects to the lodgement because no probation officer's report was prepared by Orange County (Petition at Exhibit 6, p.5).

3. Petitioner denies Respondent's claim that petitioner does not have a federally protected liberty interest (Answer, paragraph 6); or that petitioner is not entitled to relief under 28 U.S.C. §2254 (Answer, paragraph 7); or that petitioner received all due process he was entitled to (Answer, paragraph 8); or that the "some evidence" standard is not clearly established U.S. Supreme Court law (Answer, paragraph 8).

4. Petitioner denies Respondent's claim that the state court determination of petitioner's writ of habeas corpus was not contrary to, or an unreasonable application of, clearly established U.S. Supreme Court law (Answer, paragraph 9); or that the Board's decision was not arbitrary (Answer, paragraph 10); or that the Board's decision did not violate due process (Answer, paragraphs 11, 12, & 13).

5. Except as expressly admitted herein, petitioner denies each and every allegation of Respondent's answer. More specifically, petitioner reaffirms that his constitutional right to due process as guaranteed by the Fourteenth Amendment of the U.S. Constitution has been violated by the Board of Parole Hearings as stated in petitioner's writ of habeas corpus.

**I. Petitioner has made claims which entitle him to federal relief.**

Respondents argue that petitioner has not made claims that entitle him to federal relief and that petitioner is only entitled to the due process protections espoused in <u>Greenholtz</u>. (Answer, pp.3-7) Petitioner disagrees.

In Ground I, petitioner claims the Board did not follow its own rules and regulations while determining petitioner's suitability for parole

(Petition, pp. 7-9). Clearly established U.S. Supreme Court law holds agencies must conform their actions to the procedures they have adopted: Morton v. Ruiz (1974) 415 U.S. 199, 235; Vitarelli v. Seaton (1959) 359 U.S. 535; Services v. Dulles (1957) 354 U.S. 363.

In Ground II, petitioner claims the Board's decision is without support and arbitrary (Petition, pp. 10-27). Clearly established U.S. Supreme Court law holds that parole decisions must be supported by "some evidence" and cannot be arbitrary Superintendent v. Hill (1985) 472 U.S. 445. Respondents argue that Superintendent v. Hill isn't clearly established U.S. Supreme Court law (Answer, p. 3). Petitioner disagrees. Both the California Supreme Court and the Ninth Circuit hold that the "some evidence" standard is the appropriate standard of review for parole decsions (In re Rosenkrantz (2002) 29 Cal.4th 616; McQuillion v. Duncan (9th Cir., 2002) 306 F.3d 895,904. Respondents argue that AEDPA doesn't permit federal relief based on circuit case law (Answer, p.7). Petitioner is not asking for relief based on Ninth Circuit case law, but rather on U.S. Supreme Court law. Furthermore, while only U.S. Supreme Court law is controlling under AEDPA, other case law is persuasive authority "for purposes of determining whether a particular state court decision is an unreasonable application of Supreme Court law" Vlasak v. Superior Court of Calif. ex rel, County of Los Angeles (9th Cir., 2003) 329 F.3d 683,687. More importantly, the U.S. Supreme Court recently stated that it has utilized the "some evidence" standard not as a standard of proof, but rather as a standard of review when examining an administrative record developed after an adversarial proceeding Hamdi v. Rumsfeld (2004) 542 U.S. 507, 124 S.Ct. 2633,2651.

Finally, in Ground III, petitioner claims that the continual denial of petitioner's parole, based on unchanging, static factors and contrary to substantial change for the better converts petitioner's term of life with

3

1  the possibility of parole to life without the possibility of parole (Petition,
2  pp. 28-34). Clearly established U.S. Supreme Court law holds that
3  petitioner's liberty interest in parole cannot be arbitrarily abrogated
4  Wolff v. McDonnell, supra, 418 U.S. 539,551; Vitek v. Jones (1980) 445 U.S.
5  480; Hicks v. Oklahoma (1980) 447 U.S. 343; Greenholtz v. Nebraska Penal
6  Inmates (1979) 442 U.S. 1. As explained in Wolff, while prison inmates do
7  not enjoy the full range of rights and privileges available to ordinary
8  citizens, they do not surrender all of their constitutional rights upon
9  incarceration Wolff v. McDonnell, supra, 418 at 555..."there is no iron
10 curtain drawn between the constitution and the prisons of this country".
11 (Id at 555-56) Inmates are entitled to some degree of protection under the
12 Due Process clause and prison authorities must provide inmates with an
13 appropriate level of due process before they are deprived of a protected
14 liberty interest (Id at 556). Hence, petitioner has made claims that entitle
15 him to federal relief. More specifically, petitioner has shown that he is
16 entitled to more than the protections articulated in Greenholtz. If
17 petitioner were entitled only to an opportunity to be heard and a written
18 decision, then the Board could deny parole for any reason, even an arbitrary
19 one. This is not allowed under Hill or Wolff.
20 II. Petitioner has a federally protected liberty interest.
21      Respondents claim that petitioner does not have a protected liberty
22 interest, arguing the Sandin overrules the mandatory language approach
23 articulated in Greenholtz (Answer, pp. 2-3) This argument has been
24 rejected by the Ninth Circuit in McQuillion v. Duncan, supra, 306 F.3d 895,
25 pp.902-903. Furthermore, Sandin doesn't overrule any prior decisions but
26 directs courts to return to the due process principles established in Wolff
27 and Meachum which focuses the liberty analysis on the nature of the depri-
28 vation and the degree to which that deprivation causes a departure from the

basic conditions of an inmate's sentence <u>Sandin v. Conner</u> (1995) 515 U.S. 472, pp.483-485. In <u>Wolff</u>, the U.S. Supreme Court held that while the Due Process clause itself doesn't create a liberty interest in credit for good behavior, the statutory provision adopted by the state of Nebraska created a liberty interest in a shortened prison sentence that resulted from good time credits <u>Wolff v. McDonnell</u>, supra, 418 U.S. at 557. The Court reasoned that since the forfeiture or withholding of good time credits affects the length of term of imprisonment, Nebraska's system of good time credits created a liberty interest strong enough to require due process protection <u>Wolff</u>, supra, 418 U.S. at 558). A parole hearing is similar to a good time credit in that the granting of a release date results in early release from prison (i.e., freedom from restraint). The granting or denial of parole, then, clearly creates a liberty interest because any extension of an inmate's period of imprisonment represents a significant departure from the basic conditions of the inmate's sentence <u>Foucha v. Louisiana</u> (1992) 504 U.S. 71. Hence, under either approach as articulated in <u>Greenholtz</u> or <u>Wolff</u> (by way of <u>Sandin</u>), petitioner has a liberty interest entitled to protection under the due process clause of the fourteenth amendment.

III. **The state court's denial of petitioner's writ of habeas corpus is contrary to, and an unreasonable application of, clearly established U.S. Supreme Court law.**

Respondents argue that the state court correctly applied the "some evidence" standard (Answer, pp. 9-10). Petitioner disagrees.

First, the state court recharacterizes petitioner's crimes, stating "petitioner displayed no concern for his many victims some of which were left to die in a desolate field or on the doorstep to their own home." (Petition, Exhibit 52, p.5). No where in the record(s) does it state that petitioner shot someone and then left them to die. The court may properly review the record for evidence, but the court is not free to add to it.

5

Second, "the test in reviewing the Board's decision denying parole 'is not whether some evidence supports the reasons [the Board] cites for denying parole, but whether some evidence indicates a parolee's release <u>unreasonably endangers public safety</u> [citations]. Some evidence of a particular factor does not necessarily equate to some evidence the parolee's release unreasonably endangers public safety'". (Citations omitted). <u>In re Barker</u> 2007 DJDAR 7548,7555. In reviewing the record, the state court only looked at whether there was some evidence to support the Board's reasons. Thus, the state court cites as evidence to support the denial of parole such immutable factors as the nature of the offenses, the number of victims, petitioner's escalating pattern of criminal conduct, and petitioner's record of institutional misconduct. This is an objectively unreasonable application of the some evidence standard because reliance on such immutable factors will result in a permanent denial of parole. As noted by one California Court of Appeals, were it bound to look at whether the Board's reasons are supported by some evidence, it would affirm virtually every decision and be "relegated to the status of potted plants." <u>In re Roderick</u> (2007) 65 Cal. Rptr. 3d. 16, 31.

Respondents might argue that the court found support for the Board's denial in petitioner's 2006 Psychological Evaluation which is not an immutable factor. But the state court's (and Respondent's) characterization of petitioner's 2006 Psychological Evaluation as unfavorable is unfounded and a misinterpretation of Dr. Preston's report (Petition, Exhibit 52, p.6; Answer, pp.9-10). Under "Assessment of Dangerousness", Dr. Preston states that either within the institution or outside in the community petitioner presents "a less than average risk of violent behavior" (Petition, Exhibit 19, p.5). Furthermore, at the time of the evaluation (4/20/06 or nearly 3 months before the hearing...Id at p.6), petitioner had not received or

6

submitted any outside support letters (Petition, Exhibit 40), prompting Dr. Preston to write, "It appears that Mr. Titch has begun to solidify some plans for his survival in the community." (Id at p.6). Thus, Dr. Preston's following statement only states the obvious: "as long as Mr. Titch continues to program positively [between the time of the evaluation and the actual hearing] and continues to upgrade his parole plans and level of support in the community, he is moving toward a point in time in which that risk may be acceptable" (Id at p.6). To ensure that he is not misinterpreted, Dr. Preston qualifies his previous statements by concluding, "I do not believe that mental health issues will necessarily be the deciding factor in terms of deciding when Mr. Titch is appropriate for parole" (Id. at p.6). Furthermore, regardless of how Dr. Preston's last comments might be interpreted, petitioner still doesn't meet the unsuitability criteria of CCR §2281(c)(5) because petitioner doesn't have "a lengthy history of severe mental problems related to the offense."

Third, in order for the state court (or Board) to deny parole based on the nature of the offense, the court (Board) must point to conduct that is particularly egregious (In re Rosenkrantz) or, as later modified, beyond the minimum elements necessary to sustain a conviction for that offense (In re Dannenberg). More importantly, the Board's decision must be more than "a mouthing of conclusionary words" and have "a reliable factual underpinning". In re Scott (2004) 119 Cal.App.4th 871; In re Smith (2003) 114 Cal.App.4th 343,371; McQuillion v. Duncan, supra, 306 F.3d at 905. This the state court (and Board) did not do. The state court only reiterates the Board's conclusionary statements. For example, the Board states petitioner carried out his offenses in a manner that demonstrates exceptionally callous disregard for human suffering (Answer, p.9; Petition, Exhibit 52, p.4). But where is the evidence to support this

7

statement? There is no evidence at all, not even meager evidence, that indicates petitioner taunted, tormented, or tortured Laura Stoughton before killing her or gratuitously increased or unnecessarily prolonged her suffering. (see, for example, In re Viray 2008 DJDAR 5332,5335, holding "Nothing about the crime demonstrated exceptionally callous disregard for human suffering, such as taunting or torturing the victim". See also In re Gray 2007 DJDAR 7515, pp.7524-7525). Furthermore, after the lapse of 29 years and the exemplary rehabilitative gains made by petitioner, the aggravating facts of the crime(s) no longer amounts to some evidence that petitioner poses an unreasonable risk of danger to public safety In re Elkins (2006) 144 Cal.App.4th 475,498. Respondents argue that **Hill's** some evidence standard doesn't require the state courts to assess whether a nexus exists between the Board's stated findings and the ultimate question of dangerousness to society (Answer, p.8). Petitioner disagrees. State law holds that "suitability determinations must have some rational basis in fact" In re Elkins, supra, 144 Cal.App. at 489. As stated in **Roderick**, "it is not enough that there is some evidence to support the factors cited for denial; that evidence must also rationally support the core determination required by the statute before parole can be denied i.e., that a prisoner's release will unreasonably endanger public safety" (Citations omitted) In re Roderick, supra, 65 Cal.Rptr.3d at 31. More specifically, clearly established U.S. Supreme Court law says Board decisions cannot be arbitrary (Superintendent v. Hill; Sandin v. Conner). More importantly, even a particularly egregious offense cannot serve as justification for denying parole eternally In re Dannenberg 2007 DJDAR 17131,17134 (review granted by Calif. Supreme Court).

Finally, the state court's reliance on such factors as "multiple victims" (Petition, Exhibit 52, p.3), the conduct of petitioner's crime

partner (Id p.5), and the opposition to petitioner's parole (Id p.3) as evidence supporting denial of parole has now been rejected by other state court's. [See, for example, In re Barker 2007 DJDAR 7548,7558 and In re Weider (2006) 145 Cal.App.4th 570, holding the immutable factor of multiple victims cannot justify continual denial of parole; In re Montgomery (2007) 67 Cal.Rptr.3d 721,733, holding reliance on crime partner's conduct during a parole suitability determination violates inmate's due process right to individualized consideration of all relevant factors; and In re Viray 2008 DJDAR 5332,5335, holding voiced opposition to parole is not an enumerated unsuitability factor.] Respondents claim that petitioner's mere disagreement with the Board's decision does not entitle him to federal relief (Answer, p.5,10). Petitioner's writ and traverse, however, are well supported by either the record(s) or state and federal case law.

IV. **The continual denial of parole based on unchanging, static factors and contrary to substantial change for the better arbitrarily abrogates petitioner's liberty interest in parole.**

Respondents claim petitioner has not set forth any clearly established U.S. Supreme Court law, holding that continual reliance on any factors over a period of time violates due process (Answer, p.4). Petitioner disagrees. Clearly established U.S. Supreme Court law holds that state created liberty interests are entitled to protection under the Due Process clause and cannot be arbitrarily abrogated Wolff v. McDonnell (1974) 418 U.S. 539. Contrary to Respondents Answer, the Board is circumventing the state penal statutes by classifying 99% of all life term inmates' crimes as particularly egregious and falsely labeling them as an unreasonable danger to public safety. There are so many state and federal cases affirming the Board's abuse of discretion, in fact, petitioner doesn't have the space to list all of them. However, petitioner does ask the court to take judicial

9

notice of the Santa Clara Superior Court case <u>In re Criscione</u> which demonstrates statistically that the Board has, and is, abusing its discretion (Exhibit A). Respondents claim that the continual denial of petitioner's parole, based on unchanging factors, doesn't transform petitioner's sentence into life without parole (Answer, p.4). Petitioner disagrees. Just last month, in fact, petitioner attended his tenth parole hearing, and in spite of continuing to program positively (Exhibit B) and receiving another favorable psychological evaluation which incorporated the Board's new risk assessment for violence, psychopathy, and recidivism (Exhibit C) petitioner was once again denied parole for two more years (Exhibit D). Petitioner can't expect the Board to change its practice (of denying prisoners with little or no regard for their rehabilitation) any time soon either because despite criticism of the governor for appointing primarily law enforcement officials to the Board from some of the members of the state legislature, the governor appears to plan on appointing more (Exhibit E). Clearly established U.S. Supreme Court law doesn't permit such an arbitrary denial of petitioner's liberty interest (Wolff, Greenholtz, Biggs), or allow a prisoner to be denied the penal statutes which he is lawfully sentenced to (Hicks v. Oklahoma), and the federal court shouldn't either.

Dated: 8/25/08

Respectfully Submitted,

Mark Titch, Petitioner, Pro Se

## DECLARATION OF SERVICE BY MAIL

I _____Charles LeGros_____, am a resident of the Richard J. Donovan Correctional Facility, in the county of San Diego, in the state of California. I am over the age of eighteen (18) years, and I am not a party to the enclosed action. My state prison address is

```
Charles LeGros
J-27329, F1-04-227
P.O. Box 799001
San Diego, Ca  92179-9001
```

On ___8-25-08___, I served the foregoing __PETITIONER'S TRAVERSE AND LODGEMENT OF DOCUMENTS IN SUPPORT OF PETITIONER'S TRAVERSE__ on the parties named herein below by placing a true copy thereof, enclosed in a sealed envelope, with the postage thereon fully paid, in the United States mail in a deposit box so provided at the prison facility, addressed as follows:

```
United States District Court        Office of the Attorney General
Office of the Clerk                 Attn.: Linnea D. Piazza
880 Front Street, Suite 4290        110 West A Street, Suite 1100
San Diego, Ca  92101-8900           San Diego, Ca  92186-5266
```

I declare under penalty of perjury of both state and federal law that the foregoing is true and correct and that this declaration was executed on _____ ___8-25-08___ at San Diego, California.

/s/ _____Charles LeGros_____